UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
MERIMED SHIPPING INC.,                          **08 CV 4228 (VM)**

                        Plaintiff,
                                                 DECLARATION
            -against-

PERSIAN GULF SHIPPING CO., INC. a/k/a
PERSIAN GULF SHIPPING CO. LTD. a/k/a
PGSC and PGSC MARINE LTD.,

                        Defendants.
------------------------------------------X

    I, Garth S. Wolfson, hereby declare as follows:

    1.  I am a partner with the firm of Mahoney & Keane, LLP,
counsel of record for defendant, PERSIAN GULF SHIPPING CO., INC.
(PGSC) a/k/a PERSIAN GULF SHIPPING CO. LTD. a/k/a PGSC and PGSC
MARINE LTD.  Based upon my personal knowledge and my review of the
file maintained by my office, I am familiar with the proceedings
in this case.

    2.  Herewith attached are true copies of the following:

            Exhibit A:     Plaintiff's Complaint;

            Exhibit B:     Plaintiff's Affidavit in Support of
                           Prayer for Maritime Attachment;

            Exhibit C:     Ex Parte order for Process of
                           Maritime Attachment;

            Exhibit D:     Declaration of Masood Tariq;

            Exhibit E:     Decision in Express Sea Transp. V.
                           Novel Commodities S.A., No. 06 Civ.
                           2404 (GEL) (S.D.N.Y. May 5, 2006);
                           and

            Exhibit F:     Decision in Centauri Shipping Ltd.
                           v. Western Bulk Carriers KS, 528 F.
                           Supp. 2d 186 (S.D.N.Y. 2007).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 20, 2008
New York, New York

                              Respectfully submitted,

                              MAHONEY & KEANE, LLP

                              Attorneys for Defendant
                              PERSIAN GULF SHIPPING CO., INC.
                              a/k/a PERSIAN GULF SHIPPING CO.
                              LTD. a/k/a PGSC and PGSC MARINE
                              LTD.


                    By: _____
                              Garth S. Wolfson (GW 7700)
                              11 Hanover Square, Tenth Floor
                              New York, New York 10005
                              (212) 385-1422



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
MARIMED SHIPPING INC.                          :

        Plaintiff,                                :

    - against -                                      :

PERSIAN GULF SHIPPING CO. INC. a/k/a     :
PERSIAN GULF SHIPPING CO. LTD. a/k/a
PGSC and PGSC MARINE LTD.,                   :

        Defendants.                              :
--------------------------------------------------------------X

### VERIFIED COMPLAINT

The Plaintiff, Marimed Shipping Inc. (hereinafter "Plaintiff"), by its attorneys, Tisdale

Law Offices, LLC, as and for its Verified Complaint against the Defendants, Persian Gulf

Shipping Co. Inc. a/k/a Persian Gulf Shipping Co. Ltd. a/k/a PGSC (hereinafter "PGSC") and

PGSC Marine Ltd. (hereinafter "PGSC Marine")(collectively referred to as "Defendants") allege,

upon information and belief, as follows:

    1.    This is an admiralty and maritime claim within the meaning of Federal Rule of

Civil Procedure 9(h) and 28 United States Code § 1333.

    2.    At all material times, Plaintiff was and still is an entity duly organized and

existing by virtue of foreign law with a principal place of business in Monrovia, Liberia.

    3.    Upon information and belief, at all material times, Defendant PGSC was and still

is an entity duly organized and existing by virtue of the laws of Anguilla.

    4.    Upon information and belief, at all material times, Defendant PGSC Marine was

and still is an entity duly organized and existing by virtue of the laws of Anguilla.

5.    By a time charter party dated June 21, 2007, Plaintiff, disponent owner, chartered the motor vessel "CENTAURUS" (hereinafter the "Vessel") to the Defendant PGSC, as charterer, for a period of about 6 to 8 months ± 15 days in charterers' option via safeports.

6.    Certain disputes arose between the parties regarding the Vessel's late redelivery, PGSC's failure to pay hire and other breaches of the charter party.

7.    Specifically, PGSC has failed to pay hire in the total principal sum of $75,098.83. *See Hire Statement annexed hereto as Exhibit "1."*

8.    Furthermore, PGSC redelivered the Vessel on April 11, 2008, twenty-three (23) days after the agreed upon redelivery date of March 19, 2008.

9.    As a result, the Plaintiff has suffered damages in the principal sum of $992,000 for the lost opportunity of securing further employment for the Vessel at the market rate of $45,000 per day for the period from March 19, 2008 to April 20, 2008 less the hire payable to head owners for this period.

10.    Further, the Defendant was unjustly enriched by the profits made by the Vessel during the period from March 19, 2008 to April 20, 2008 and, as such, Plaintiff has suffered damages in the estimate principal sum of $1,100,000 for the defendant PGSC's unjust enrichment.

11.    As a result of Defendant PGSC's breach of the charter party contract, Plaintiff has suffered losses in the total principal sum of **$2,167,098.80**, as best can now be estimated, exclusive of interest, recoverable costs and reasonable attorneys' fees.

12.    Despite due demand, the Defendant has failed to pay the sums due and owing to the Plaintiff under the charter party.

–2–

13.    Pursuant to the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

14.    In accordance with the charter party, the Plaintiff has commenced arbitration and appointed its arbitrator.

15.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London proceedings pursuant to English Law.  As best as can now be estimated, Plaintiff expects to recover the following amounts in arbitration:

|   |   |   |
|---|---|---|
| A. | Principal claim: | $2,167,098.80 |
| B. | Estimated interest on the principal claim at 7.5% for three years | $474,969.25 |
| C. | Attorneys fees and arbitration costs: | $150,000.00 |
| Total: | | **$2,792,068.05** |

16.    Defendant PGSC Marine is the alter ego of Defendant PGSC because PGSC dominates and disregards PGSC Marine's corporate form to the extent that PGSC is actually carrying on the business and operations of PGSC Marine as if the same were its own.

17.    Upon information and belief, Defendant PGSC Marine is a shell-corporation through which Defendant PGSC conducts its business.

18.    Upon information and belief, Defendant PGSC Marine has no separate, independent identity from Defendant PGSC.

19.    Upon information and belief, Defendants PGSC Marine and PGSC share a common registered address at: The Hansa Bank Building, 1st Floor, Landsome Road, The Valley, Anguilla.

—3—

20.    Upon information and belief, Defendant PGSC Marine and PGSC share a common registered agent: Mr. Samuel McCleary.

21.    Upon information and belief, Defendant PGSC Marine acts as paying agent, or receiving agent or arranges for other non-parties to satisfy the debts and obligations of Defendant PGSC and/or receive payments being made to Defendant PGSC.

22.    Although PGSC Marine was not named in the charter parties, and had no formal relationship to the charters of the Vessel, PGSC Marine made a payment to the Plaintiff on PGSC's behalf. *See wire remittance annexed hereto as Exhibit "2."*

23.    Upon information and belief, Defendant PGSC uses Defendant PGSC Marine as a "pass through" entity such that it can insulate itself from creditors relating to its commercial obligations.

24.    It is not common practice in the maritime industry for an independent company to pay another company's debt, where it has no formal relationship to the underlying charter parties.

25.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN-AMRO, American Express Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A., which are believed to be due and owing to the Defendant.

26.    The Plaintiff seeks an order from this Court directing the Clerk of Court to

–4–

issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims attaching any assets of the Defendant held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and federal common law attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, ABN-AMRO, American Express Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A. which are due and owing to the Defendants, in the amount of **$2,792,068.05** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Complaint;

C.    That this Court recognize and confirm any foreign judgment/award of costs on the claims had herein as a judgment of this Court;

D.    That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof; and

   E.  That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: May 2, 2008
   New York, NY

         The Plaintiff,
         MARIMED SHIPPING INC.,

By:
         Lauren C. Davies (LD 1980)
         Thomas L. Tisdale (TT5263)
         TISDALE LAW OFFICES, LLC
         11 West 42nd Street, Suite 900
         New York, NY 10036
         (212) 354-0025 (Phone)
         (212) 869-0067 (Fax)
         ldavies@tisdale-law.com
         ttisdale@tisdale-law.com

## ATTORNEY VERIFICATION

State of Connecticut  )
                   )    ss: SOUTHPORT
County of Fairfield    )

1.    My name is Lauren C. Davies.

2.    I am over 18 years of age, of sound mind, capable of making this Verification and fully competent to testify to all matters stated herein.

3.    I am the attorney for the Plaintiff in this action. I am fully authorized to make this Verification on its behalf.

4.    I have read the foregoing Verified Complaint and the contents thereof are true and accurate to the best of my knowledge, information and belief.

5.    The reason that this Verification was made by me and not the Plaintiff is that the Plaintiff is a corporation none of whose officers are present in this District.

6.    The source of my knowledge is information and records furnished to me by the Plaintiff and its counsel, all of which I believe to be true and accurate.

Dated: May 2, 2008
       Southport, Connecticut

_____
Lauren C. Davies

# EXHIBIT 1



# Marimed

PROVISIONAL FINAL CHARTER HIRE STATEMEN    4/28/2008

| | | | | | DEBIT ($) | CREDIT ($) |
|---|---|---|---|---|---|---|
| M/V: | CENTAURUS | | C/P : | 21.06.2007 | | |
| HIRE : | $25,000.00 PER DAY | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| HIRE PERIOD: | FROM : | 6/30/2007 | | 12:00 | hrs gmt | | |
| | TO : | 4/11/2008 | | 08:00 | hrs gmt | | |
| TOTAL HIRE DUE : | 285.8333 | DAYS @ | $25,000.00 | | | | 7,145,833.33 |
| COMMISSION : | 5.00 | % | | | | 357,291.67 | |

| | | | | | |
|---|---|---|---|---|---|
| OFF HIRE | | JUBAIL | 0.770834 | 20,204.19 | |
| OFF HIRE | | BOILER DAM/ | 2.07152 | 53,614.90 | |
| OFF HIRE | | STOPPAGE 17. | 0.28472 | 7,329.10 | |
| OFF HIRE | | CRANE B/D 25 | 0.0902 | 2,256.46 | |
| OFF HIRE | | AT SEA 15-16/ | 0.66319 | 16,762.41 | |
| OFF HIRE | | 20.12.2007 | 0.17222 | 4,390.66 | |
| OFF HIRE | | A SEA 05.02.2( | 0.19097 | 4,705.87 | |
| OFF HIRE | | AT SEA 30.03.: | 0.6875 | 17,336.12 | |
| BUNKERS | | | | | |
| IFO ON DELIVERY | 646.400 | MTN X | $360.00 | | 232,704.00 |
| MDO ON DELIVERY | 34.500 | MTN X | $630.00 | | 21,735.00 |
| | | | | | |
| IFO ON REDELIVERY | 633.400 | MTN X | $360.00 | 228,024.00 | |
| MDO ON REDELIVERY | 19.200 | MTN X | $630.00 | 12,096.00 | |

| | | |
|---|---|---|
| OWNER'S EXPENSES | | |
| ON HIRE SURVEY - 1/3 OF USD 672.00 | 224.00 | |
| EST. O/E - SUBJECT TO RCV VOUCHERS | 3,000.00 | |

| | | |
|---|---|---|
| CHARTERER'S EXPENSES | | |
| C/V/E LMPSM USD 1300 PMPR | | 12,370.43 |
| | | |
| COMPENSATION FOR CALLING INDUNESIA | | 6,500.00 |
| EXTRA PAYMENT FOR LIME REMOVAL | | 3,000.00 |
| INTERIM HOLDS CLEANING PARADIP (VOY 7) | | 4,000.00 |
| REPAIRS STEV. DAMAGE | | 1,500.00 |
| ADD REPAIS BY CREW | | 3,080.00 |
| BALAST WATER AT YUZHNY V.12 - 1700/3 | | 566.67 |
| INTERMEDIATE HOLDS CLEANING V.8-11,12 | | 17,500.00 |
| 1/3 OF UNSEALING CERTIFICATE ($500.00) | | 166.66 |
| 2/4 OF CHARGES INCURRED AT B.I.K | | 4,779.50 |
| 50 PCT OFF HIRE SURVEY | | 300.00 |
| CARGO SURVEY AT CZA - 1/3 | | 666.67 |
| STEVEDORES DAMAGE AT ILICHEVSK | | 9,000.00 |
| 50 PCT OF EXTRA PORT COST AT ILICHEVSK | | 1,170.50 |
| STEV DAMAGE AT NOVO 29/5-6/6/07 2 WIAI | | 3,050.00 |
| STEV DAMAGE AT NOVO HOLD NO. 2 WIAI | | 2,250.00 |
| 1/3 PRELOADING SURVEY YUZHNY 2-4/2/08 | | 393.48 |
| 1/3 PRELOADING SURVEY ILI. - EURO 4505.74 | | 2,284.63 |
| STEV DAMAGES AT J. ALI | | 8,200.00 |
| | | |
| IN LIEU OF HOLDS CLEANING | | 4,000.00 |

| | | | |
|---|---|---|---|
| REMITTANCES | | | |
| ########## | 03.07-11.03.2008 | | |
| 74,792.84 | 03.04.2008 | | |
| 47,571.86 | 08.04.2008 | 6,682,716.66 | |
| 47,571.94 | 09.04.2008 | | |
| BALANCE DUE TO OWNERS | | 75,098.83 | |
| | | 7,485,050.87 | 7,485,050.87 |

| | | |
|---|---|---|
| Bankers | : | The Royal Bank of Scotland |
| | | London Shipping Business Centre Office |
| Sort code | : | 16-01-01 |
| IBAN BIC (SWIFT) | : | RBOSGB2LXXX |
| Beneficiary | : | Marimed Shipping Inc |
| IBAN | : | GB35 RBOS 1663 0000 2204 54 | (0.00) |
| | | |
| Correspondent Bank | : | American Express Bank, New York |
| SWIFT | : | AEIBUS33XXX |

Marimed Shipping Inc. - 80 Broad Street, Monrovia, Liberia

marimed-group.com

Correspondence Address: c/o T L T - Sea Containers House, 20 Upper Ground, London SE1 9LH, United Kingdom

# EXHIBIT 2

15/02/08-18:12:01                    REMITTANCER-3048-000001

```
------------------ Instance Type and Transmission ----------------
Notification (Transmission) of Original sent to SWIFT (ACK)
Network Delivery Status   : Network Ack
Priority/Delivery         : Normal
Message Input Reference   : 1612 080215HBZUGB2LAXXX3909516707
----------------------- Message Header --------------------------
                          : FIN 103 Single Customer Credit Transfer
Swift Input
Sender      : HBZUGB2LXXX
            HABIB BANK AG ZURICH
            LONDON GB
Receiver    : RBOSGB2LXXX
            ROYAL BANK OF SCOTLAND PLC
            LONDON GB
------------------------- Message Text --------------------------
  20: Sender's Reference
      US080215MGT762
  23B: Bank Operation Code
      CRED
  32A: Val Dte/Curr/Interbnk Settld Amt
      Date        : 15 February 2008
      Currency    : USD (US DOLLAR)
      Amount      :                     *54,304.00*
  33B: Currency/Instructed Amount
      Currency    : USD (US DOLLAR)
      Amount      :                     *54,304.00*
  50K: Ordering Customer-Name & Address
      PGSC MARINE LTD
  52A: Ordering Institution - BIC
      HBZUGB2L
      HABIB BANK AG ZURICH
      LONDON  GB
  53A: Sender's Correspondent - BIC
      CITIUS33
      CITIBANK N.A.
      NEW YORK,NY  US
  54A: Receiver's Correspondent - BIC
      AEIBUS33
      AMERICAN EXPRESS BANK, LTD.
      NEW YORK,NY  US
  57D: Account With Inst -Name & Addr
      /SC160101
      THE ROYAL BANK OF SCOTLAND
      LONDON SHIPPING BUSINESS CENTRE
      OFFICE
  59: Beneficiary Customer-Name & Addr
      /GB35RBOS16630000220454
      MARIMED SHIPPING INC
  70: Remittance Information
      /BNF/REF MV CENTAURUS - OFF HIRE
      //CLAIM
  71A: Details of Charges
      BEN
  71F: Sender's Charges
      Currency    : USD (US DOLLAR)
      Amount      :                     *0.00*
--------------------------- Message Trailer ---------------------
{MAC:18D4604D}
{CHK:785E76372F22}
PKI Signature: MAC-Equivalent
--------------------------- Interventions ----------------------
Category        : Network Report
Creation Time   : 15/02/08 16:11:43
Application     : SWIFT Interface
Operator        : SYSTEM
Text
{1:F21HBZUGB2LAXXX3909516707}{4::177:080215161}{451:0}}
*End of Message
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

MARIMED SHIPPING INC.                              :

          Plaintiff,                              :          08 CV 4228

                                    ECF CASE

   - against -                              :

PERSIAN GULF SHIPPING CO. INC. a/k/a          :
PERSIAN GULF SHIPPING CO. LTD. a/k/a
PGSC and PGSC MARINE LTD.,                    :

          Defendants.                           :

-----------------------------------------------------------X

### AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
                )   ss: SOUTHPORT
County of Fairfield    )

      Lauren C. Davies, being duly sworn, deposes and says:

      1.     I am a member of the Bar of this Court and represent the Plaintiff herein.  I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANTS ARE NOT PRESENT IN THE DISTRICT

      2.     I have attempted to locate the Defendants, PERSIAN GULF SHIPPING CO. INC.

a/k/a PERSIAN GULF SHIPPING CO. LTD. a/k/a PGSC and PGSC MARINE LTD., within

this District.  As part of my investigation to locate the Defendants within this District, I checked

the telephone company information directory, as well as the white and yellow pages for New

York listed on the Internet or World Wide Web, and did not find any listing for the Defendants.

      3.     I also checked the New York State Department of Corporations' online database,

which showed a listing for PERSIAN GULF SHIPPING CO. INC. as having registered to do business in New York or April 10, 2008. *See NY Department of State Division of Corporations Entity Information annexed hereto as Exhibit "1."*

4.       Despite this registration to do business and the appointment of a DOS Process server, I submit that the Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

5.       According to the Second Circuit, in order for a defendant to be "found within the district," a two pronged test must be met. First, the defendant must be "found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." *Seawind Compania, S.A. v. Crescent Line, Inc.,* 320 F. 2d 580, 582 (2d Cir. 1963); *quoted in Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GMBH & Co.,* 409 F. Supp. 2d 427, 432 (S.D.N.Y. 2006).

6.       Here, the defendant can be found for service of process but not in terms of jurisdiction as mere registration to do business alone is not enough to be "found" for the purposes of Rule B. As stated by the Court in *Erne,* "neither policy underlying Rule B is vindicated by predicating jurisdiction on a mere filing for authorization to do business under the Business Corporation Law. Accordingly, we do not consider such filing to be sufficient to make a showing that a defendant is "found" within the district." *See Erne Shipping,* 409 F. Supp. 2d at 438 (overruled on other grounds); *but see Centauri Shipping Ltd. v. Western Bulk Carriers KS,* 528 F. Supp. 2d 187 (S.D.N.Y. 2007).

7.       Upon information and belief, the Defendants has, or will have during the pendency of this action, tangible and intangible property within the District in the hands of ABN

–2–

Amro, American Express Bank, Bank of America, Bank of New York, Citibank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A.

## PRAYER FOR ORDER ALLOWING SPECIAL PROCESS SERVER

8.      Plaintiff seeks an order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Thomas L. Tisdale, Claurisse A. Campanale-Orozco, Lauren C. Davies or any other partner, associate, paralegal or other agent of TISDALE LAW OFFICES, LLC to serve the Verified Complaint, Process of Maritime Attachment and Garnishment, Interrogatories or other process in this action, in addition to the U.S. Marshall to serve the Process of Maritime Attachment and Garnishment and the Verified Complaint, together with any Interrogatories, upon the garnishee(s), together with any other garnishee(s) who, based upon information developed subsequent hereto by the Plaintiff, may hold property of, for or on account of the Defendants.

9.      Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy an award/judgment ultimately obtained and entered against the Defendants.

10.     To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involved a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

11.    Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation to be holding, or believed to be holding, property of the Defendants, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the court amended Process seeking simply to identify other garnishee(s).

### PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

12.    Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served through the next day, provided that process is served the next day, to authorize service of process via facsimile or e-mail following initial *in personam* service.

13.    This is Plaintiff's first request for this relief made to any Court.

Dated: May 2, 2008
      Southport, CT

Lauren C. Davies

Sworn and subscribed to before me
this 2nd day of May 2008.

Notary Public

-4-

# EXHIBIT 1

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: PERSIAN GULF SHIPPING COMPANY INC.

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | PERSIAN GULF SHIPPING COMPANY INC. |
| **Initial DOS Filing Date:** | APRIL 10, 2008 |
| **County:** | NEW YORK |
| **Jurisdiction:** | ALL OTHERS |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

MAHONEY & KEANE, LLP
111 BROADWAY, TENTH FL.
NEW YORK, NEW YORK, 10006

**Registered Agent**

NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARIMED SHIPPING INC.                              :

        Plaintiff,                              :        08 CV 4 ____
                                 ECF CASE

    - against -                              :

PERSIAN GULF SHIPPING CO. INC. a/k/a        :
PERSIAN GULF SHIPPING CO. LTD. a/k/a
PGSC and PGSC MARINE LTD.,                    :

        Defendants.                            :
-------------------------------------------------------------X

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-5-08

## EX PARTE ORDER FOR PROCESS OF MARITIME ATTACHMENT

**WHEREAS**, on May 2, 2008 Plaintiff, MARIMED SHIPPING INC., filed a Verified

Complaint herein for damages amounting to **$2,792,068.05** inclusive of interest, costs and

reasonable attorney's fees, and praying for the issuance of Process of Maritime Attachment and

Garnishment pursuant to Rule B of the Supplemental Admiralty Rules for Certain Admiralty and

Maritime Claims of the Federal Rules and Civil Procedure; and

    **WHEREAS**, the Process of Maritime Attachment and Garnishment would command that

the United States Marshal or other designated process server attach any and all of the

Defendants' property within the District of this Court; and

    **WHEREAS**, the Court has reviewed the Verified Complaint and the Supporting

Affidavit, and the conditions of Supplemental Admiralty Rule B appearing to exist, it is hereby

    **ORDERED**, that Process of Maritime Attachment and Garnishment shall issue against

all tangible or intangible property belonging to, claimed by or being held for the Defendants by

any garnishees within this District, including but not limited to, ABN Amro, American Express

Bank, Bank of America, Bank of New York, Citibank, Deutsche Bank, HSBC (USA) Bank, JP

Morgan Chase, Standard Chartered Bank and/or Wachovia Bank, in an amount up to and

including $2,792,068.05, pursuant to Rule B of the Supplemental Rules for Certain Admiralty

and Maritime Claims of the Federal Rules of Civil Procedure; and it is further

ORDERED that any person claiming an interest in the property attached or garnished

pursuant to said order shall, upon application to the Court, be entitled to a prompt hearing at

which the Plaintiff shall be required to show cause why the attachment and garnishment should

not be vacated or other relief granted; and it is further

ORDERED that supplemental process enforcing the Court's Order may be issued by the

Clerk upon application without further Order of the Court; and it is further

ORDERED that following initial service by the United States Marshal or other

designated process server upon each garnishee, that supplemental service of the Process of

Maritime Attachment and Garnishment, as well as this Order, may be made by way of facsimile

transmission or other verifiable electronic means, including e-mail, to each garnishee; and it is

further

ORDERED that service on any garnishee as described above is deemed effective

continuous service throughout the day from the time of such service through the opening of the

garnishee's business the next business day; and it is further

ORDERED that pursuant to Federal Rule of Civil Procedure 5(b)(2)(D) each garnishee

may consent, in writing, to accept service by any other means; and it is further

**ORDERED** that a copy of this Order be attached to and served with said Process of Maritime Attachment and Garnishment.

Dated: May 5 , 2008

**SO ORDERED:**

U. S. D. J.  Victor Marrero

This Order shall remain in effect for 90 days of the date hereof. Plaintiff is directed to inform the Court of the status of the matter within 60 days of this Order. Upon expiration, plaintiff may petition the Court for

**SO ORDERED:** an extension of the Order for an additional 90 days.

5-5-08

**DATE**        **VICTOR MARRERO, U.S.D.J.**

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MERIMED SHIPPING INC.,                          08 CV 4228 (VM)

                    Plaintiff,

                                                DECLARATION
        -against-

PERSIAN GULF SHIPPING CO., INC. a/k/a
PERSIAN GULF SHIPPING CO. LTD. a/k/a
PGSC and PGSC MARINE LTD.,

                    Defendants.
------------------------------------------------------------X

        I, MASOOD TARIQ, hereby declare as follows:

        1.    I am the GENERAL MANAGER of defendant PERSIAN GULF

SHIPPING CO., INC. (PGSC) a/k/a PERSIAN GULF SHIPPING CO. LTD.

a/k/a PGSC and PGSC MARINE LTD.  Based upon my personal knowledge

and my review of the file maintained by my office, I am familiar

with the facts and circumstances of the above-captioned action.

        2.    PGSC specializes in the carriage of bulk fertilizer,

sulphur, coal cement, and steel and has been actively involved

with the carriage of these products for many years.  It is well

known in these trades and regularly transports more than two

million tonnes of cargo to and from the United States, as well as

Morocco, the United Kingdom, and other countries.

        3.    All of PGSC's contracts involving counter-parts in New

York are too numerous to mention.  PGSC has chartered several

vessels from United States based owners.  Indeed, the M/V

CENTAURUS, very ship implicated in the instant dispute, was under

time charter with The Rice Company, of the United States.

                                1

4.   PGSC also took the M/V GOMAIN NAREE under charter from United States owners on October 27, 2007, a fact which plaintiff should know well, since the plaintiff is currently sub-chartering it. Moreover, that charter calls for New York arbitration, which PGSC soon intends to commence against plaintiff for failure to pay hire.

5.   In fact, many of PGSC's charters routinely include New York arbitration clauses.   PGSC has taken the M/V TITAN on charter from Phoenix Bulk Carriers, for example, also with mandatory New York jurisdiction. PGSC has also previously availed itself of the jurisdiction of this Court in bringing suit on an unrelated matter.

6.   PGSC has further chartered the M/V BEL ANA for three to five months from Jebsens International (USA) Inc., registered in New Jersey.   PGSC also regularly transports cargo for Conagra Fertilizers (USA), which has offices in New York.   PGSC has chartered the M/V ROCKAWAY BELLE to Conagra recently for carriage of Urea from the Arabian Gulf to the United States.

7.   And PGSC has for many years used the brokerage firm of Bulk Chem Chartering Corporation in New York to book Conagra, as well as other contracts.   PGSC also employs the services of Mid Ship New York, Skaarup Shipbroking, and TFS Freight.

8. Another major United States client of PGSC is Oxbow International, for which PGSC has contracted cargo regularly, using Skaarup Shipbroking of Connecticut, also in the grater New York metropolitan area, to book those cargoes.

9. PGSC has also recently contracted with Transworld Cargo Carriers, New York based owners of the M/V TUCKAHOE MAIDEN.

10. Currently we are in negotiations for a contract of carriage of one million tonnes of coal from New York to the United Kingdom which we expect to conclude by the end of this month.

11. And PGSC employs MR S SHAUKAT of 18FR CAPODANNO BLVD – APT2R – STATEN ISLAND, NEW YORK – NY 10305 – USA on a commission basis to solicit cargo bookings in New York and for marketing purposes.

12. The above are only examples. In short, PGSC regularly solicits business in New York, charters ships to or from the Port of New York, contracts with parties with New York offices, and employs the services of brokers in the New York area.

13. Moreover, in 2007, in furtherance of its aim to concentrate on the needs of its customer bases in the London and New York, and to further strengthen and increase its chartering activities there, PGSC decided to open offices in London and New York. Accordingly, an office has been opened in London and PGSC duly registered to do business in the State of New York. PGSC designated an agent for service of process in New York City, and is in the process of planning the staffing and setting up a full office.

14. If the above is somehow not enough, I again reiterate that PGSC consents to the personal jurisdiction of the New York courts in this and other matters.[1]

---

[1] Finally, it should be noted for the record that the complaint's allegations concerning the merits of this dispute are largely false, and the damages claim, though still completely unsupported, appears to have increased exponentially since it was first presented by plaintiff's solicitors. Plaintiff was obligated to redeliver the vessel to head owners by April 15, 2008, and PGSC paid all hire through April 11, 2008, when, after the vessel had been redelivered by PGSC's sub-charterers, plaintiff redelivered the vessel to head owners. In fact, plaintiff has suffered no actual loss in this case. Plaintiff's claim appears to be no more than a "preemptive strike," since it is well-known to the parties that the vessel had constant engine failures and consistently underperformed throughout the period of the charter in clear breach of the charter party. PGSC will present a counter-claim for damages in any arbitration and reserves the right to seek counter-security, as well as a reduction in the amount of the attachment, should this attachment be sustained.

Pursuant to 28 U.S.C. ' 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 19, 2008
at DUBAI

_____ (L.S.)
Masood Tariq

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

EXPRESS SEA TRANSPORT CORP.,      :

              Plaintiff,      :

   -against-      :

NOVEL COMMODITIES S.A.,      :

            Defendant.      :

------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/5/06

06 Civ. 2404 (GEL)

**ORDER**

GERARD E. LYNCH, District Judge:

    For the reasons stated on the record in open court on May 4, 2006, the attachment issued by this Court on March 28, 2006, is hereby vacated.

    The parties are instructed that unless reason is given before May 15, 2006, as to why this action should continue, the Court will dismiss the action.

SO ORDERED.

Dated: New York, New York
    May 4, 2006

                            GERARD E. LYNCH
                          United States District Judge

654YEXPC.txt

1

654YEXPC
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3
3  EXPRESS SEA TRANSPORT CORP.,
4
4.              Plaintiff,
5
5              v.                    06 Civil 2404 (GEL)
5
6  NOVEL COMMODITIES S.A.,
6
7              Defendant.
7
8  ------------------------------x
8
9                                   May 4, 2006
9                                   3:15 p.m.
10
10
11 Before:
11
12        HON. GERARD E. LYNCH,
12
13                                   District Judge
13
14
14
15                    APPEARANCES
15
15
16 FREEHILL, HOGAN & MAHAR, LLP
17 Attorneys for Plaintiff
17      80 Pine Street
18      New York, New York
18 MICHAEL E. UNGER, ESQ.,
19      Of counsel
19
19
20
20 FOWLER, RODRIGUEZ & CHALOS, LLP
21 Attorneys  for Defendant
21      336 Main Street
22      Port Washington, New York
22 OWEN F. DUFFY, ESQ.,
23 BRIAN T. MCCARTHY, ESQ.,
23      Of counsel
24
24
25

              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

2

654YEXPC
1        THE CLERK:  In the matter of Express Sea Transport
2  Corporation against Novel Commodities.
3        Counsel, please identify yourselves for the record,
4  beginning with plaintiff.
5        MR. UNGER:  Michael Unger, Freehill, Hogan & Mahar for
6  Express Sea Transport.
7        MR. DUFFY:  Owen Duffy for the defendant Novel
8  Commodities, with my colleagues Brian McCarthy.
              Page 1

654YEXPC.txt

```
 9          THE COURT: Good afternoon, counsel.
10          This case is before this court on the defendant's
11  motion to vacate an order of maritime attachment that was
12  entered on March 29, 2006.  The parties appeared for a hearing
13  on May 2 and I promised to decide the matter by this afternoon.
14          After considering the arguments presented at the
15  hearing and contained in the parties' papers and the subsequent
16  submissions made by both sides, the court will now grant the
17  defendant's motion and vacate the attachment.
18          Under Rule B of the Supplemental Rules of Certain
19  Admiralty and Maritime Claim, a plaintiff may attach a
20  defendant's property within the district if the plaintiff's
21  claim is a maritime action and if the defendant is not found
22  within the district.  The defendant has challenged the validity
23  of plaintiff's attachment and, therefore, plaintiff has the
24  burden to show that the attachment was proper.  In this case
25  the dispute regarding the propriety of the attachment centers
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

3

```
 1  on whether the defendant, Novel, can be found within the
 2  district for the purposes of Rule B.
 3          A defendant is found within the district if it is
 4  both, one, found within the district for purposes of
 5  jurisdiction and, two, found within the district for purposes
 6  of service of process.  That is Seawind Compania, S.A., versus
 7  Crescent Line Incorporated, 320 F.2d 580 at 582, (2d Cir.
 8  1963).
 9          The plaintiff argues that under this test the
10  defendant was not found in the district because plaintiff
11  engaged in a diligent search for the defendant and didn't find
12  him.  This argument is without merit for two reasons:
13          First, plaintiff's reliance on the diligence of its
14  search is misplaced.  There is case law supporting the
15  proposition that a diligent search that fails to undercover
16  defendant's agent for service of process is sufficient to
17  satisfy the service prong inquiry even if the defendant does,
18  in fact, have an agent for process within the district.  See,
19  for example, West of England Ship Owners Mutual Insurance
20  Association versus MacAllister Brothers Incorporated, 829 F.
21  Supp. 122 at 123 to 24, Eastern District of Pennsylvania, 1993.
22          The applicability of this rule to the service prong
23  makes some degree of sense.  A defendant should not be able to
24  avoid suit by hiding an agent away from potential plaintiffs
25  thereby forcing the plaintiff to attach property before the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

4

```
 1  defendant comes forward to reveal the hidden agent.  In such a
 2  situation a determination that a defendant is not found within
 3  the district for service of process despite the fact that there
 4  was an agent within the district serves as a sort of penalty
 5  rule to discourage any hidden agent tactics.
 6          Plaintiff has pointed to no case, however, that
 7  applies this doctrine to the jurisdiction prong of the inquiry,
 8  and the rational that underpins the doctrine on the service
 9  issue does not extend to the jurisdiction issue.
10          Second, regardless of the applicability of plaintiff's
11  argument regarding what was knowable at the time of the search,
12  the record reveals that plaintiff did, in fact, know all the
13  relevant facts.  Plaintiff did find by going to the office of
```

Page 2

.654YEXPC.txt

14  the New York Secretary of State that defendant had a registered
15  agent for service of process within the district.  In fact, in
16  arguing that its search was diligent, plaintiff asserts that
17  the search "revealed the very items which defendant now asserts
18  constituted its presence."  Plaintiff's memorandum at pages 2
19  to 3.
20       The issue for the court, therefore, is not the
21  diligence of plaintiff's search, but, rather, whether the facts
22  uncovered by that search, the same facts asserted by the
23  defendant, lead to the conclusion that the defendant can be
24  found within this district.
25       As previously mentioned, the determination of whether
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              5

654YEXPC
1   a defendant is found within the district for purposes of Rule B
2   is governed by the two-prong Seawind test.
3        Taking the second prong of the test first, it is clear
4   that defendant is found in the district for service of process
5   purposes.  Plaintiff admits that the defendant has designated
6   an agent for service of process with the New York Secretary of
7   State.
8        Plaintiff argues, however, that defendant nevertheless
9   may not be found within the district for purposes of service of
10  process because when plaintiff's attorney called the offices of
11  defendant's agent, the person who answered the phone was unable
12  to confirm that the agent was authorized to accept service on
13  behalf of defendant.  Plaintiff provides no information with
14  regard to who this person on the phone was or whether he or she
15  is expected to know anything about defendant's agreement with
16  the agent to accept service on defendant's behalf.  Plaintiff
17  did not attempt to follow up on the phone call nor did it
18  attempt to serve defendant via the agent.  One inconclusive
19  phone call is insufficient to carry plaintiff's burden of
20  showing that the defendant is not found in the district for
21  purposes of service, especially in light of the parties'
22  agreement that the defendant does, in fact, have a registered
23  agent on file with the Secretary of State and the fact that
24  plaintiff actually and without difficulty discovered that fact
25  and defendant's averment that the agent is, in fact, authorized
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              6

654YEXPC
1   to accept service.
2        Turning now to the first jurisdictional prong of the
3   inquiry, the court also finds that defendant can be found
4   within this district for purposes of jurisdiction.  To satisfy
5   this test, a defendant must "be engaged in sufficient activity
6   in the district to subject it to jurisdiction even in the
7   absence of a resident agent expressly authorized to accept
8   process."  Seawind, 320 F.2d at 383.
9        Plaintiff argues that a defendant may only be found
10  within the district if it engages in substantial commercial
11  activity within the district.  Essentially, the plaintiff's
12  view is that whether defendant is subject to suit in the
13  district is irrelevant and that what matters is the sum of
14  defendant's activities in the district regardless of the
15  connection between those activities and any requirements of
16  personal jurisdiction.
17       However, our Court of Appeals rejected that rule in
18  Seawind by stating the jurisdiction prong can be met by a
                              Page 3

654YEXPC.txt
19  showing of specific personal jurisdiction arising from the
20  particular claims there at issue even if the defendant's
21  broader activities were insufficient to establish general
22  jurisdiction.
23          Accordingly, this court interprets the jurisdiction
24  prong of the inquiry to require only that the courts of this
25  district have personal jurisdiction over the defendant whatever
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    7

654YEXPC
 1  the basis of that jurisdiction may be. And, indeed, to the
 2  extent that Rule B attachments are designed at least in part to
 3  secure jurisdiction in situations where because of the lack of
 4  presence of the defendant within the jurisdiction in personam
 5  jurisdiction cannot be obtained, it certainly seems to make
 6  sense to interpret the inquiry in just that way.
 7          In this case the defendant is subject to suit in the
 8  courts of this district and, therefore, may be found here for
 9  purposes of jurisdiction. This is so for two reasons:
10          First, the defendant has stated on the record that it
11  would submit to an order issued by this court to compel
12  resolution of the underlying dispute in arbitration in London
13  as required by the charter party, thus, defendant has
14  specifically consented to the jurisdiction of this court.
15          Second, defendant is a registered foreign corporation
16  within the State of New York and under New York law a
17  corporation that registers to do business within the state
18  consents to general jurisdiction in the courts of the state.
19  See Iyalla versus TRT Holdings Incorporated, 2005 Westlaw
20  1765707 at page star 3, (S.D.N.Y. July 25, 2005). Accordingly,
21  defendant is subject to suit in the courts of this district
22  and, therefore, defendant may be found within the district for
23  purposes of jurisdiction.
24          The cases relied upon by plaintiff do not compel a
25  contrary conclusion. First and foremost, plaintiff cites only
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    8

654YEXPC
 1  to opinions of district courts and magistrate judges and so to
 2  the extent that those jurisdictions are contrary to governing
 3  Second Circuit authority, this court must follow its own best
 4  understanding of circuit case law in preference to that of
 5  courts of parallel authority.
 6          Second, the cases cited do not support plaintiff's
 7  contention that only substantial commercial activity makes a
 8  court finding that a defendant is found within the district for
 9  purposes of jurisdiction. To the contrary, the cases cited by
10  plaintiff support the conclusion that the relevant issue is
11  amenability to suit.
12          For example, in Federazione, a case relied on heavily
13  by plaintiff, the district court inquired into defendant's
14  business activity within the district, but only insofar as that
15  activity related to the question of whether it was "unfair or
16  unreasonable to require defendant to respond to suit in this
17  forum." Federazione Italiana versus Mandask Compania De
18  Vapores, S.A., 158 F. Supp. 107 at 109, S.D.N.Y. 1957).
19          Similarly, in Bay Casino, the district court listed
20  substantial commercial activity as just one of many ways in
21  which a defendant could be found within the district for
22  purposes of jurisdiction, along with, for example, breaching a
23  contract within the district or signing a forum selection
                              Page 4

654YEXPC.txt
```
24   clause.  Bay Casino, LLC versus M/V Royal Empress, 20 F. Supp.
25   2d 440 at 451, (S.D.N.Y 1998).  If signing a forum selection
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
9

654YEXPC
```
1    clause is sufficient to render a defendant present within the
2    jurisdiction, it must follow that the key issue is whether the
3    defendant is amenable to suit for whatever reason and not the
4    extent of his physical or commercial presence within the
5    district.
6          The only case cited by plaintiff that appears to adopt
7    its substantial activity interpretation of the jurisdiction
8    test is Erne Shipping Incorporated versus HBC Hamburg Bulk
9    Carriers GmbH & Co., 409 F. Supp. 2d 427, (S.D.N.Y 2006).
10         Aside from the fact that Erne appears to this court to
11   be in conflict with Seawind, this court does not find the
12   reasoning of Erne persuasive.  The magistrate judge in Erne
13   concluded that the defendant's registration to do business in
14   New York and the accompanying consent to general jurisdiction
15   was insufficient to amount to being found in the district for
16   purposes of jurisdiction.  The court's conclusion was based on
17   an analysis of the purposes of maritime attachment, which it
18   concluded require actual presence based on actual activity
19   within the district.
20         First, the court concluded that actual presence would
21   make it more likely that assets would be found within the
22   district to provide security for plaintiff.  This appears
23   inapposite.  A Rule B attachment presupposes that there are
24   assets in the district, assets that have already been attached.
25         Second, the court concluded that registration would
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
10

654YEXPC
```
1    not guarantee defendant's presence in the district because
2    registration can be withdrawn.
3          While that observation is technically true, it is also
4    somewhat irrelevant.  Once a registered corporate defendant is
5    sued and served within the district, it is too late for the
6    defendant to revoke its registration.  The defendant is subject
7    to the jurisdiction of the court and any proceedings necessary
8    to secure the defendant's presence can be taken by the court
9    pursuant to the Federal Rules.  If not wanting to submit to the
10   power of the district court the defendant subsequently revokes
11   it's registration, that would have no effect on any pending
12   litigation, and future plaintiffs then would be able to utilize
13   Rule B attachment.  Essentially, Rule B gives potential
14   defendants a choice; either they subject themselves to the
15   courts of the district or they open up the possibility that
16   their property in the district will be attached.
17         Defendant is found and was found by the plaintiff
18   within the district for the purposes of service of process and
19   for the purposes of jurisdiction.  Therefore, defendant was
20   found within the district under Rule B and the attachment must
21   be vacated.
22         The parties devote considerable attention to an issue
23   that has divided the judges in this district, whether on a
24   motion to vacate a Rule B attachment a plaintiff must show, in
25   addition to satisfying the explicit requirements of Rule B,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
11

Page 5

654YEXPC.txt

1   that the attachment is fair or accords with the purposes of the
2   rule.
3           Because this court has determined that the
4   requirements, the technical requirements of Rule B are not
5   satisfied, it is not necessary to reach that issue. The
6   requirements of Rule B have not been met and, therefore,
7   defendant's motion to vacate the attachment is granted.
8           Okay. I think that resolves the attachment issue and
9   the question then is, is there anything else that remains of
10  this action?
11          If the action were solely for purposes of securing the
12  attachment, then I suggest that it be withdrawn. If the
13  complaint on the other hand seeks to have the defendant submit
14  to arbitration, the defendant has already stipulated in open
15  court that it would do so and I think that probably renders the
16  action moot, but maybe the best way to do that is to enter that
17  stipulation in writing and then, in effect, dismiss the case as
18  settled on that basis, but I will leave it to the parties to
19  discuss that and see what is going to happen next.
20          I guess just to put a terminus on it, if I don't hear
21  something different from the parties within, let's say,
22  essentially ten days, by a week from Monday, then I will
23  dismiss the action as moot.
24          All right. Anything else that we need to do today?
25          MR. DUFFY: May, your Honor, WE issue a formal order,
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                            12

654YEXPC

1   because we need to present it to the garnishee.
2           THE COURT: Yes. We will put out the order right away
3   for reasons stated in open court on this date on the record the
4   attachment is vacated. If you want some other form of order
5   you can submit it.
6           MR. DUFFY: So the garnishee is satisfied.
7           THE COURT: Right. That ought to do it.
8   Yes.
9           MR. UNGER: Your Honor, a couple of things.
10          There is a ten day automatic stay that applies to the
11  release of the funds by the garnishee. I would ask that your
12  Honor keep that stay in place so that the funds remain, because
13  I believe my client is going to instruct an appeal of your
14  Honor's order.
15          THE COURT: If it is an automatic stay, then there is
16  nothing I can do, right?
17          MR. UNGER: It is only for ten days and after ten days
18  regardless whether we filed an appeal or not the banks would be
19  entitled to release the funds. What I am asking is that the
20  funds remain under restrained --
21          THE COURT: No, that is denied. I'm confident that
22  the ruling is correct. If you want to appeal, file your appeal
23  within ten days and ask the Court of Appeals to extend the
24  stay. I think that is more appropriate. Then they can decide
25  whether they think there is sufficient merit to warrant
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                            13

654YEXPC

1   granting a further stay.
2           MR. UNGER: Thank you, your Honor.
3           The other item is in our papers we had asked for
4   certain discovery. I understand your Honor has already ruled,
                        Page 6

654YEXPC.txt
```
 5   but one of those items of discovery we had in mind to obtain
 6   would be discovery as to whether or not Novel has complied with
 7   the requirements of all foreign companies that register to do
 8   business, and that would include filing a biannual information
 9   statement and filing tax returns with the New York State
10   authorities, which I think is relevant, your Honor, to whether
11   or not the registration is actual and valid.
12       THE COURT:  No, it's not.. They are here, they got the
13   agent, they are registered, they concede they are subject to
14   jurisdiction, they are subject to jurisdiction.  There is
15   nothing further to have discovery of, point one.
16       Point two, we had an extensive argument of this two
17   days ago and nobody suggested to me that a decision on this
18   should be deferred pending some further discovery or that this
19   discovery is somehow necessary to resolve this issue.
20   Therefore, I went ahead and I resolved the issue.  It is
21   resolved, it is over and done with.
22       If there remains or is to remain some action in this
23   court on the merits, well, then you will be entitled to
24   whatever discovery you are entitled to on the merits.  It will
25   be the first occasion I am aware of where plaintiff tries to
```
                   SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                14

654YEXPC
```
 1   take discovering to prove it doesn't have jurisdiction in the
 2   action.
 3       If the underlying action is going to proceed, the
 4   defendant has expressly consented to jurisdiction right here in
 5   open court, has -- I don't know if we actually discussed this,
 6   but I think to the extent that we may be in a situation where
 7   the defendant hasn't actually been served, you are waiving
 8   service or accepting service or something, right?
 9       MR. DUFFY:  Accepting service, your Honor.  We haven't
10   formerly filed an answer, but if it is necessary we will do so.
11       THE COURT:  So I don't think there is any issue
12   anymore as to the defendant's amenability to suit, and if there
13   is a suit to be had here, I'm not sure what that suit is since
14   both sides agree that the proper forum is London and the
15   defendant agrees to arbitrate in London.  Either you will go
16   there and do it or you will get an order compelling the
17   defendant to do it out of this court and I don't know what else
18   is left.
19       I mean, there is no claim by the plaintiff, as I
20   understand it, that this court should adjudicate the merits of
21   the dispute, there is only an issue whether the defendant has
22   to go to London and they are happy to go.
23       So I think there is nothing to have discovery about
24   and no case left, but as I say, if I misunderstand that in some
25   way you will let me know within ten days.  So while you are
```
                   SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                15

654YEXPC
```
 1   making up your mind to appeal; you can also make up your mind
 2   about that.
 3       But it seems to me and I think it has been clear from
 4   the beginning, and this is not any criticism, nothing improper
 5   about it, that this action was about getting the attachment.
 6   The attachment has now been vacated and its time for some other
 7   court if you want to bring it there to decide whether that's
 8   correct or not.  But at the end of the day, I think it would be
 9   irresponsible for me to grant a further stay because the whole
```
                                Page 7

654YEXPC.txt
```
10    point of this procedure is to decide whether there is a basis
11    for attaching the defendant's property.  I have decided that
12    there isn't and so they should be entitled to the use of their
13    property as soon as possible.  That's my view of it.
14         If it is somebody's view, higher authority and greater
15    wisdom that they shouldn't be entitled to the use of their
16    property, well, it's for that court to enter a stay and protect
17    its jurisdiction and do whatever it thinks is appropriate.  But
18    for my purposes, you know, if this order is automatically
19    stayed, fine, it is automatically stayed and that gives you the
20    opportunity to seek a further stay in the appropriate court.
21         All right.  I think we are done.
22    Thank you very much.
23                              - - -
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

LEXSEE

**CENTAURI SHIPPING LTD., Plaintiff, VERSUS WESTERN BULK CARRIERS KS, WESTERN BULK CARRIERS, AS, AND WESTERN BULK, AS, Defendants.**

No 07-CV-4761 (RJS) (HBP)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*528 F. Supp. 2d 186; 2007 U.S. Dist. LEXIS 77953; 2008 AMC 43*

October 12, 2007, Decided
October 12, 2007, Filed

**SUBSEQUENT HISTORY:** Sanctions disallowed by, Request denied by *Centauri Shipping Ltd. v. Western Bulk Carriers KS, 528 F. Supp. 2d 197, 2007 U.S. Dist. LEXIS 83134 (S.D.N.Y., Nov. 5, 2007)*

**COUNSEL:** [**1] Plaintiff is represented by Kirk M.H. Lyons, Esq., Lyons & Flood, L.L.P., New York, New York.

Defendants are represented by Kevin John Lennon, Esq., and Patrick F. Lennon, Esq., Lennon, Murphy & Lennon, LLC, New York, New York.

**JUDGES:** RICHARD J. SULLIVAN, United States District Judge.

**OPINION BY:** RICHARD J. SULLIVAN

**OPINION**

[*187] MEMORANDUM AND ORDER

October 12, 2007

RICHARD J. SULLIVAN, District Judge:

Plaintiff Centauri Shipping Ltd. ("Centauri") commenced the above-entitled action on June 5, 2007, seeking, *inter alia,* a writ of attachment pursuant to Rule B of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims. On that date, the Honorable Kenneth M. Karas, District Judge, signed an order permitting plaintiff to attach assets of defendants Western Bulk Carriers KS ("defendant" or "WBC KS"), Western Bulk Carriers AS ("WBC AS"), and Western Bulk AS (collectively, the "WBC Group"), in the amount of $ 15,350,796.00 (hereinafter, "the attachment order"). (*See* Order dated June 5, 2007.)

Subsequently, by order dated September 7, 2007, the Court vacated the attachment order (hereinafter, "the *vacatur*"). Plaintiff now moves, pursuant to *Rule 62 of the Federal Rules of Civil Procedure,* [**2] to stay the *vacatur* during the pendency of the appeal of that order or, in the alternative, to stay the *vacatur* temporarily so that plaintiff may apply for a stay to the Second Circuit Court of Appeals. For the following reasons, the Court denies plaintiff's motion for a stay pending appeal, and orders a temporary stay pending resolution of plaintiff's application to the Court of Appeals.

I. BACKGROUND AND PROCEDURAL HISTORY

The Court presumes the parties' familiarity with the facts and procedural history of this action. Below, the Court briefly recites the facts necessary to resolve the instant motion: [1]

> 1  The facts recited herein are undisputed, unless otherwise noted.

On June 5, 2007, Centauri commenced this action by filing a complaint and a proposed *ex parte* order of attachment against WBC KS and two distinct corporate entities that co-own WBC KS. (Compl. P 3; Vangsnes Decl. P 10.) In support of the proposed attachment order, Centauri's counsel submitted an affirmation (the "June 5 affirmation") stating, *inter alia,* that:

> Your affiant [plaintiff's counsel] has attempted to locate the defendants . . . within this District. As part of the investigation, my office has contacted the Division [**3] of Corporations of the New York Department of State and found no records indicating that defendants were either incorporated or licensed to do busi-

528 F. Supp. 2d 186, *; 2007 U.S. Dist. LEXIS 77953, **;
2008 AMC 43

ness in the State of New York. . . . I de-
clare and state under the penalty of per-
jury that the foregoing is true and correct.

(Lyons Aff. dated June 5, 2007, P 2.)

On June 5, 2007, Judge Karas signed the *ex parte* at-
tachment order. Thereafter, Centauri proceeded to attach
assets of WBC KS found within the Southern District of
New York (the "District") in the amount of $
15,350,796.00. (Lyons Aff. dated Sept. 17, 2007 (herein-
after, "Lyons Aff."), P 2.) On June 15, 2007, upon WBC
KS' motion, Judge Karas signed an order dissolving the
attachment and directing WBC KS to post a bond in the
amount equal to the attached assets (the "surety bond").
(Order dated June 15, 2007.)

Subsequently, on August 10, 2007, WBC KS moved
to vacate the attachment order pursuant to *Rule E of the
Supplemental Rules for Certain Admiralty and Maritime
Claims* ("Rule E"). In its moving papers, WBC KS as-
serted that the above-quoted portion of the June 5 affir-
mation of plaintiff's [*188] counsel was demonstrably
false, and that, in fact, WBC KS had been licensed as a
foreign corporation [**4] in New York State since 2005
and was so licensed at the time that plaintiff sought and
obtained the attachment order. (Lennon Decl. P 5.)

By letter dated August 16, 2007, plaintiff's counsel
represented to the Court that, at the time he submitted the
proposed attachment order and the June 5 affirmation, he
had "knowledge that defendant [WBC KS] was regis-
tered" with the State as a foreign corporation. (Pl.'s Aug.
16, 2007 Ltr., at 2.) However, according to plaintiff's
counsel, the false statements regarding WBC KS' regis-
tration were included in the June 5 affirmation due to a
purported "clerical error" by plaintiff's counsel. [2] (*Id.*)

> 2   On September 12, 2007, the Court directed
> plaintiff's counsel to show cause as to why the
> Court should not impose sanctions on counsel
> pursuant to *Rule 11(b) of the Federal Rules of
> Civil Procedure*, in light of counsel's submission
> of a demonstrably false affidavit. The issue of
> whether to impose sanctions on plaintiff's counsel
> is now pending before the Court.

On September 5, 2007, the undersigned heard oral
argument regarding the motion to vacate. [3] (*See* Tr. of
Proceedings on Sept. 5, 2007.) By oral decision on Sep-
tember 7, 2007, the Court granted WBC [**5] KS' mo-
tion to vacate the attachment and stated the reasons
therefor on the record (the "*vacatur decision*"). (*See* Tr.
of Proceedings on Sept. 7, 2007 (hereinafter, "Tr. of the
*Vacatur* Decision").) On September 12, 2007, the Court
issued the *vacatur*, lifting the attachment and directing

plaintiff to return the surety bond to WBC KS after the
expiration of ten days from the date of the *vacatur.*

> 3   This action was reassigned to the undersigned
> on September 4, 2007.

On September 17, 2007, plaintiff filed a notice of
appeal of the *vacatur* with the Court of Appeals for the
Second Circuit. Also on September 17, 2007, plaintiff
filed a motion with this Court to stay the *vacatur* pending
appeal. On September 28, 2007, the Court heard oral
argument regarding plaintiff's motion to stay. (*See* Tr. of
Proceedings on Sept. 28, 2007.)

## II. STANDARD OF REVIEW

As a threshold matter, the Court must determine the
correct subsection of *Rule 62* to apply to plaintiff's mo-
tion. In their submissions to the Court, the parties address
plaintiff's motion as one made under *subsection (d) of
Rule 62*. However, it is well-settled that *subsection (d)*
applies exclusively to stays of money judgments, and
permits the moving   [**6] party to obtain a stay *as of
right* upon the posting of a *supersedeas* bond. *See, e.g,
Perez & CIA, Inc., v. United States, 747 F.2d 813, 816
(1st Cir. 1984)* (Breyer, J.) (observing that *Rule 62(d)* "is
likely aimed at money judgments, the value of which can
be calculated and secured with relative ease") (internal
citation omitted); *In re Tower Automotive, Inc., No. 06-
CV-2105 (RWS), 2007 U.S. Dist. LEXIS 49282, 2007 WL
1975447, at * 1-2 (S.D.N.Y. July 6, 2007)* (finding that
"*Rule 62(d)* is inapplicable" where "the [c]ourt's
[o]pinion was not a money judgment, but rather a de-
claratory judgment which determined the scope of [a
party's monetary] obligation"); *see also Hebert v. Exxon
Corp., 953 F.2d 936, 938 (5th Cir. 1992)* (granting a
*Rule 62(d)* stay only where the declaratory judgment
required payment of "a specific sum of money"); *Gov-
ernment Guar. Fund of Fin. v. Hyatt Corp., 167 F.R.D.
399, 400, 34 V.I. 274 (D.V.I. 1996)* ("Although the issue
appears not to have arisen very often, those courts to
address it have limited the applicability of *Rule 62(d)* to
appeals from money judgments or their equivalent.")
(internal citations omitted).

Accordingly, the Court finds that *subsection (c)*,
rather than *subsection (d)*, of [*189] *Rule 62* should
[**7] apply in this case. *Rule 62(c)* provides, in pertinent
part:

> When an appeal is taken from an inter-
> locutory or final judgment granting, dis-
> solving, or denying an injunction, the
> court in its discretion may suspend, mod-
> ify, restore, or grant an injunction during
> the pendency of the appeal upon such
> terms as to bond or otherwise as it consid-

528 F. Supp. 2d 186, *; 2007 U.S. Dist. LEXIS 77953, **;
2008 AMC 43

ers proper for the security of the rights of the adverse party.

  *Fed. R. Civ. P. 62(c).*


  In the instant case, it is clear that plaintiff's motion should be analyzed under *subsection (c)* because the *vacatur* effectively "lift[ed] . . . an injunction" which provided for the attachment of defendants' assets, *see Fed. R. Civ. P. 62(c)*, and ordered plaintiff "to do" an affirmative act -- namely, to return the surety bond to defendant, *see Donovan v. Fall River Foundry Co., 696 F.2d 524, 526 (7th Cir. 1982)* ("The reference in *Rule 62(d)* to *supersedeas* bond suggests that had the framers thought about the point they would have limited the right to an automatic stay to cases where the judgment being appealed from was a 'money judgment.' . . . But this solution makes little sense as applied to an order to do, rather than an order to pay, whether or not the order to [**8] do is a conventional injunction."). *See In re Tower Automotive, Inc., 2007 U.S. Dist. LEXIS 49282, 2007 WL 1975447, at *1-2*; *accord Perez & CIA., Inc., 747 F.2d at 816* (applying *subsection (c)* rather than *subsection (d)* to "[a] case in which a party seeks review of an agency's suspension order, . . . [because it] is more naturally viewed as a case involving an order to do, or not to do, something (that is, involving something like an injunction) rather than a case involving a money judgment") (internal citation omitted).

  In any event, the Court notes that, although the parties specifically cite *subsection (d)* in their submissions, both characterize plaintiff's motion as an application for the Court to exercise its *discretion* to stay the *vacatur* pending appeal, and both present arguments relating to the factors for a discretionary stay under *Rule 62(c)*. (*See* Pl.'s Mem. at 3; Defs.' Mem. at 3.)

## III. DISCUSSION

### A. The Relevant Factors

  The factors relating to a discretionary stay under *Rule 62(c)* include:

  (1) Whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal;

  (2) The risk of irreparable injury to the movant absent a stay;

  (3) The lack of substantial harm [**9] to the non-movant if the stay is granted;

  (4) The public interests that may be affected.

*Hirschfeld v. Bd. of Elections, 984 F.2d 35, 39 (2d Cir. 1993)* (internal citations omitted); *Tower Automotive, 2007 U.S. Dist. LEXIS 49282, 2007 WL 1975447, at * 1-2.* In making such a determination, "[t]he Court treats these factors 'somewhat like a sliding scale.'" *United States v. VISA U.S.A., Inc., No. 98-CV-7076 (BSJ), 2007 U.S. Dist. LEXIS 58018, 2007 WL 2274866, at *1 (S.D.N.Y. Aug. 7, 2007)* (quoting *Thapa v. Gonzales, 460 F.3d 323, 334 (2d Cir. 2006))*. Thus, "'the necessary level or degree of possibility of success will vary according to the court's assessment of the other stay factors.'" [4] *Id.* (quoting *Thapa, 460 F.3d at 334*) (additional internal quotation marks [*190] and citation omitted); *see also Hayes v. City Univ. of New York, 503 F. Supp. 946, 962 (S.D.N.Y. 1980)* ("Issuance of a stay pending appeal is discretionary and equitable . . .").

  4  Defendant asserts that a movant's "'failure to satisfy one prong of the standard for granting a stay pending appeal dooms the motion.'" (Defs.' Br. at 3 (quoting *Covanta Onondaga Ltd. P'ship v. Onondaga County Resource Recovery Agency, No. 02-CV-492, 2002 U.S. Dist. LEXIS 20298, 2002 WL 31399797, at *2 (N.D.N.Y. Oct. 24, 2002)*).) The Court [**10] notes that its review of relevant authority regarding the above-cited standard does *not* indicate that the movant's failure to satisfy one factor "dooms the motion." (*Id.*) Rather, as noted *supra*, it is well-settled that the above-cited factors are treated as a "sliding scale," wherein "'more of one excuses less of the other.'" *Thapa, 460 F.3d at 334* (citing *Mohammed v. Reno, 309 F.3d 95, 100 (2d Cir. 2002))*. In addition, the single district court case cited by defendant in support of this proposition, *Covanta Onondaga,* appears to have derived the "failure as to one, failure as to all" rule from a line of decisions addressing applications for stays under the Bankruptcy Rules. *See Covanta Onondaga, 2002 U.S. Dist. LEXIS 20298, 2002 WL 31399797, at *2 (citing Green Point Bank v. Treston, 188 B.R. 9,12 (S.D.N.Y. 1995)* (denying an application for a stay of a bankruptcy court order under *Bankruptcy Rule 8005*)). As such, the Court declines to apply the rule advanced by defendants, and, instead, adopts the "sliding scale" approach employed by the Court of Appeals for the Second Circuit and the overwhelming majority of district courts in this Circuit.

  For the following reasons, the Court concludes, upon examination of these [**11] factors, that plaintiff's

528 F. Supp. 2d 186, *; 2007 U.S. Dist. LEXIS 77953, **;
2008 AMC 43

motion to stay the *vacatur* pending appeal should be denied.

### 1. Substantial Possibility of Success On Appeal

Plaintiff asserts that the *vacatur* was wrongly decided, and, more specifically, that there is a substantial possibility that the Court of Appeals will adopt plaintiff's position on the issue of whether defendant WBC KS can be "found" within the District for the purposes of *Rule B*. [5] Defendants respond that plaintiff has merely reiterated arguments that were previously rejected by this Court in the *vacatur* decision, and that the authorities relied on by the Court in that decision indicate that there is not a substantial possibility that plaintiff's position will prevail on appeal.

> 5   As discussed in the *vacatur* decision, *Rule B* provides that, for an order of attachment to issue, the plaintiff must establish that the defendant cannot be "found within the district." Rule B(l)(a). The Second Circuit has held that this requirement presents "a two-pronged inquiry: First, whether (the respondent) can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." *Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir.1963)* [**12] (internal quotation marks and citations omitted). The Court notes that plaintiff has conceded that the second prong of the *Seawind* test has been satisfied in this action. Specifically, it is undisputed that WBC KS has a designated agent for service of process in this District. However, the parties have vigorously disputed whether defendant was present for jurisdictional purposes within the District at the time of attachment. In the *vacatur* decision, the Court found that defendant was present for jurisdictional purposes.

The "key inquiry" with regard to the jurisdictional presence issue is "whether the defendant is amenable to suit within the district." [6] (*See* Tr. of *Vacatur Decision*, [*191] at 7.) Upon consideration of defendant's motion to vacate the attachment order, the Court conducted such an inquiry and concluded that WBC KS has unambiguously made itself amenable to suit within the District. (*See id.* at 3-8.) With regard to the instant motion, the Court adheres to its prior determination on this issue, and further finds, for the following reasons, that plaintiff's position -- namely, that defendant's amenability to suit in the District is insufficient, by itself, to establish defendant's [**13] presence here -- does not present a "substantial" possibility of success on appeal.

> 6   As a threshold matter, the Court notes that there is a split of authority among district courts

in this circuit as to the central issue in this action -- namely, whether defendant's registration in New York State as a foreign corporation and its consent to this Court's jurisdiction, taken together, are sufficient to establish under Rule B that defendant can be "found" for jurisdictional purposes within the District. *Compare Express Sea Transport Corp., v. Novel Commodities S.A.,* No. 06-CV-2404 (GEL) (Tr. of Oral Decision issued on May 4, 2006) (S.D.N.Y. 2006) (finding that the defendant's registration as a foreign corporation in New York State and its consent to the court's jurisdiction were sufficient to establish that it "can be found within the district for the purposes of jurisdiction"), *with Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co. KG, 409 F. Supp. 2d 427, 438 (S.D.N.Y. 2006)* ("[W]e do not consider such filing to be sufficient to make a showing that a defendant is 'found' within the district."). Nevertheless, notwithstanding the divergent authority on this issue, the Court finds, [**14] for the reasons set forth herein and for the reasons stated on the record in the *vacatur* decision, that plaintiff has failed to establish a possibility of success on appeal.

In evaluating the jurisdictional presence factor under *Rule B*, the Second Circuit and the majority of district courts in this Circuit have focused principally upon that party's amenability to suit rather than the party's economic and physical activities in the district at issue. In *Integrated Container, Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119, 123 (S.D.N.Y. 1979)*, Judge Leval, sitting on the district court, held that the defendant could be "found" within the district for jurisdictional purposes based on, *inter alia,* the defendant's registration as a licensed foreign corporation within New York State and an agreement in which the defendant expressly consented to "the jurisdiction of the courts of New York." [7] More recently, the Second Circuit declined to discuss specifically the presence factor, but, instead, cited *Integrated Container* for the proposition that district courts have not "experienced any confusion in its application." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 n.4 (2d Cir. 2006).* [**15] Indeed, the court in *Aqua Stoli* specifically characterized the district court's opinion in *Integrated Container* as "explaining the [presence] requirement." *Aqua Stoli, 460 F.3d at 445 n.4.*

> 7   The court in *Integrated Container* also relied on the fact that the defendant had entered into a third agreement which "called for submission to arbitration in New York with New York law to apply." *476 F. Supp. at 123.* In addition, the Court notes that, ultimately, the *Integrated Con-*

tainer court declined to vacate the maritime attachment in that case because the defendant did not satisfy the service of process prong of the *Seawind* test. By contrast, in the instant case, as noted *supra*, it is undisputed that WBC KS has satisfied the service of process prong of the *Seawind* test.

Plaintiff argues that the court in *Integrated Container* specifically rejected the "notion . . . that an agent in the district over whom personal jurisdiction could be gained . . . was alone sufficient to meet the jurisdictional presence prong under Rule B." (Pl.'s Mem. at 7.) Instead, according to plaintiff, the court in *Integrated Container* "required something more than the mere presence of an agent in the district" for the [**16] purposes of the jurisdictional presence factor. (*Id.*) However, plaintiff offers an overly narrow view of the scope of the court's holding in *Integrated Container* regarding the jurisdictional presence factor. Rather, in *Integrated Container,* the court held that the jurisdictional presence factor is satisfied either where the defendant's "activity in the district" or its "contacts with the district . . . permit the court to exercise *in personam* jurisdiction over the defendant." *476 F. Supp. at 122.* Applying this standard, the court found that the defendant's registration as a foreign corporation in New York State and its consent via contract to the court's jurisdiction and to arbitration within New York State were sufficient to establish the defendant's jurisdictional presence in the district at issue. *See id. at 123.*

Similarly, in this case, it is undisputed that, as noted *supra,* WBC KS is a registered foreign corporation within the State of New York and, as such, under well-settled principles of New York State law, WBC KS has consented to general jurisdiction in the courts of the state, and, [*192] consequently, in this Court. *See Speed v. Pelican Resort N.V. No. 91-CV-7765 (SWK), 1992 U.S. Dist. LEXIS 8278, 1992 WL 147646, at *1 (S.D.N.Y. June 16, 1992)* [**17] (finding, with regard to a Netherlands Antilles corporation, that "it is clear that 'if a foreign corporation is authorized to do business in this state, a court is justified in inferring that it is doing business so that it is subject to jurisdiction of the courts.'") (quoting 14 N.Y. Jur. 2d, Business Relationships § 522 (1981)); *accord Iyalla v. TRT Holdings, Inc., No. 04-CV-8114 (NRB), 2005 U.S. Dist. LEXIS 14913, 2005 WL 1765707, at *3 (S.D.N.Y. July 25, 2005)* ("[A]ny corporation registered to do business within the state is subject to personal jurisdiction in the state."); *Obabueki v. IBM, Nos. 99-CV-11262, 99-CV-12486 (AGS), 2001 U.S. Dist. LEXIS 11810, 2001 WL 921172, at *5 (S.D.N.Y. Aug. 14, 2001).* Furthermore, it is beyond doubt that WBC KS has specifically consented, on the record, to the jurisdiction of this Court for the purposes of any and all proceedings

relating to this action. [8] Accordingly, based on the close similarity of the facts relating to the presence issue in this case with those found in *Integrated Container,* the fact that the Second Circuit has recently cited with approval the analysis of that issue by the district court in *Integrated Container,* and, as set forth in the *vacatur* decision, this Court's prior determination [**18] that the controlling factor with regard to jurisdictional presence is the defendant's amenability to suit in the District, the Court finds that plaintiff's position does not present a substantial possibility of success on appeal.

> 8 Defendant's counsel stated such consent in two appearances before the Court: during argument regarding the *vacatur* and, once again, during argument regarding the instant motion to stay. (*See* Tr. of *Vacatur* Decision, at 7; Tr. of Proceedings on Sept. 28, 2007, at 12.)

### 2. The Risk of Irreparable Injury to Plaintiff

Plaintiff asserts that, absent a stay of the *vacatur,* there is a significant risk of irreparable injury to plaintiff. Specifically, plaintiff asserts that, absent a stay of the *vacatur,* WBC KS may withdraw its registration as a licensed foreign corporation in New York State, thus preventing this Court and/or the Court of Appeals from exercising jurisdiction over WBC KS. In addition, plaintiff argues that, if WBC KS is permitted to remove the surety bond, WBC KS may subsequently experience a financial downturn which may, in the absence of the surety bond, frustrate plaintiff's efforts to collect on any future money judgment obtained by plaintiff against [**19] defendant. The Court rejects both of plaintiff's arguments and, instead, finds that, absent a stay, there is little risk that plaintiff will suffer irreparable injury that cannot be compensated by money damages.

### a. Loss of Jurisdiction Over Defendant

The Court rejects plaintiff's assertion that defendant's de-registration as a licensed foreign corporation in New York would somehow prevent this Court and/or the Court of Appeals from exercising jurisdiction over defendant. As an initial matter, the Court notes that plaintiff has failed to offer any evidence that defendant intends to de-register, and defendant vigorously asserts its intention to maintain its current registration status. However, even assuming *arguendo* that defendant is likely to de-register and, subsequently, remove its assets from the District, it is beyond doubt that this Court and the Court of Appeals would retain jurisdiction over this action.

In *Republic National Bank of Miami v. United States, 506 U.S. 80, 87-88, 113 S. Ct. 554, 121 L. Ed. 2d 474 (1992),* the Supreme Court, applying admiralty principles to a civil forfeiture proceeding, [9] found [*193] that, while a district court must have jurisdiction over a

528 F. Supp. 2d 186, *; 2007 U.S. Dist. LEXIS 77953, **;
2008 AMC 43

*res* to *initiate* an *in rem* action, it need not maintain [**20] continuous control of the *res* to *maintain* jurisdiction of the action. The Court observed:

> Stasis is not a general prerequisite to the maintenance of jurisdiction. Jurisdiction over the person survives a change in circumstances, *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 454, 52 S. Ct. 238, 76 L. Ed. 389, 1932 Dec. Comm'r Pat. 564 (1932) ("[A]fter a final decree a party cannot defeat the jurisdiction of the appellate tribunal by removing from the jurisdiction, as the proceedings on appeal are part of the cause," citing *Nations v. Johnson*, 65 U.S.C. (24 How.) 195, 16 L. Ed. 628 (1861)), as does jurisdiction over the subject matter, *Louisville, N.A. & C.R. Co. v. Louisville Trust Co.*, 174 U.S. 552, 566, 19 S. Ct. 817, 43 L. Ed. 1081 (1899) (midsuit change in the citizenship of a party does not destroy diversity jurisdiction); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289-290, 58 S. Ct. 586, 82 L. Ed. 845 (1938) (jurisdiction survives reduction of amount in controversy). Nothing in the nature of *in rem* jurisdiction suggests a reason to treat it differently.

*Republic Nat'l Bank*, 506 U.S. at 87-88.

9  28 U.S.C. § 2461(b) directs federal courts to conduct civil forfeiture proceedings in a manner "as near as may be to proceedings in admiralty."

In the context of maritime attachments, at least one [**21] circuit has, not surprisingly, read the holding in *Republic National Bank* to "eliminate any requirement on a party seeking to institute a maritime attachment to obtain a stay or post a *supersedeas* bond to preserve the district court's jurisdiction over the garnished funds while [that party] appealed the release of the garnished funds." *Stevedoring Servs. of Am. v. Ancora Transp., N.V.*, 59 F.3d 879, 882 (9th Cir. 1995) ("We conclude that the district court's release of the garnished funds . . . did not divest the court of jurisdiction over the *res*.") [10]; *see also Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 860, 861 (9th Cir. 2005) ("In short, *in rem* or *quasi in rem* jurisdiction remains throughout the course of an appeal, as long as jurisdiction was properly obtained at the initiation of the action. Otherwise, the prevailing party could frustrate the losing party's appeal by transferring the *res* out of the district court's jurisdiction, a practice to which [t]he Supreme Court objected in no uncer-

tain terms in *Republic National Bank*.") (internal quotation marks and citation omitted).

10  The court in *Stevedoring Services* rejected as immaterial the lone fact that could have [**22] served to undermine the application of the *Republic National Bank* holding in the context of maritime attachments; specifically, the court refused to distinguish the Supreme Court's holding based upon the fact that the forfeiture action at issue in *Republic National Bank* was an *in rem* proceeding and that maritime attachments are *quasi in rem* proceedings. *See Stevedoring Servs.*, 59 F.3d at 882-83 ("[T]his difference suggests no reason why we should distinguish the Supreme Court's decision in [*Republic National Bank*].").

Here, the Court adopts the sound reasoning of the Ninth Circuit in *Stevedoring Services* in applying the holding of *Republic National Bank* to the maritime attachment context, and, as such, concludes that defendant's de-registration, and the subsequent removal of defendant's assets from the District, will not divest this Court or the Court of Appeals of jurisdiction over defendant. Accordingly, the Court rejects the alleged injury regarding the loss of jurisdiction over defendant as a basis for a stay.

b. Plaintiff's Inability to Enforce Money Judgments Against Defendant

Plaintiff also asserts that "the loss of the surety bond [posted by defendant] in this [*194] matter would be [**23] an irreparable injury, since there is a reasonable chance that [defendant] may not be able to satisfy" future money judgments obtained by plaintiff against defendant. (Pl.'s Mem. at 14.) The Court rejects this alleged injury as a basis for a stay pending appeal. Instead, the Court finds that the monetary injury alleged by plaintiff is not the type of injury that may justify a stay of the *vacatur* pending appeal.

"As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (per curiam); *see also Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003) ("To establish irreparable harm, the injury alleged 'must be one requiring a remedy of more than mere money damages.") (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)); *E.E.O.C. v. Local 638*, No. 71-CV-2877 (RLC), 1995 U.S. Dist. LEXIS 7756, 1995 WL 355589, at *2 (S.D.N.Y. June 7, 1995) ("Irreparable injury means 'the kind of injury for which money cannot compensate,' and

528 F. Supp. 2d 186, *; 2007 U.S. Dist. LEXIS 77953, **;
2008 AMC 43

therefore [**24] '[a] monetary loss will not suffice unless the movant provides evidence of damage[] that cannot be rectified by financial compensation.'") (quoting *Sperry Int'l Trade, Inc. v. Gov't of Israel, 670 F.2d 8, 12 (2d Cir. 1982)*, and *Tucker Anthony Realty Corp., 888 F.2d at 975*). However, "courts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents." *Brenntag Int'l Chems., Inc., Inc., 175 F.3d at 250* (collecting cases). Accordingly, monetary injury *may* suffice to establish irreparable harm in situations "where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing imminent bankruptcy, or is in a perilous financial state." *Bridgeport, Port Jefferson Steamboat Co. v. Bridgeport Port Auth., No. Civ. A. 3:03-CV-599 (CFD), 2004 U.S. Dist. LEXIS 6643, 2004 WL 840140, at *3 (D. Conn. April 15, 2004)* (internal quotation marks and citations omitted); *accord Sea Carriers Corp. v. Empire Programs, Inc., No. 04-CV-7395 (RWS), 2006 U.S. Dist. LEXIS 83843, 2006 WL 3354139, at *4 (S.D.N.Y. Nov. 20, 2006)* ("Monetary loss therefore will not suffice unless the movant shows damage that cannot be rectified by financial compensation . . . . One such exception is where the party [**25] to be enjoined is shown to be insolvent or imminently insolvent."); *Mitsubishi Power Sys., Inc. v. Shaw Group, Inc., No. 04-CV-1251 (RMB), 2004 U.S. Dist. LEXIS 4125, 2004 WL 527047, at *2 (S.D.N.Y. March 16, 2004)* ("Courts have generally applied this limited exception where insolvency is imminent.").

Here, it is beyond doubt that the injuries alleged by plaintiff are *not* ones requiring a remedy of more than money damages: plaintiff specifically seeks to ensure that it will be able to collect on money judgments against WBC KS.

Furthermore, plaintiff has failed to establish that any judgment against defendant WBC KS would otherwise be uncollectible. Plaintiff has not asserted that WBC KS is currently insolvent, and the Court rejects as mere speculation plaintiff's assertions regarding the perilous financial condition of WBC KS. Indeed, although plaintiff has shown that WBC KS has experienced some financial losses within the past four years, it is clear that WBC KS retains sizable assets and, as of August 31, 2007, had generated pre-tax profits of $ 20.4 million during the current financial year. (Vangsnes Decl. PP 11, 15.) As such, WBC KS does not appear to be experiencing the financial distress that other courts [**26] have required before applying the "imminent insolvency" exception to the monetary injury rule. *See, e.g., Mitsubishi Power Sys., 2004 U.S. Dist. LEXIS 4125, 2004 WL 527047, at *4 [*195]* (citing, *inter alia*, the following cases: *Meringolo v. Power2Ship, No. 03-CV-4476 (PKL), 2003 U.S. Dist. LEXIS 12997, 2003 WL*

*21750009, at *3-5 (S.D.N.Y. July 28, 2003)* (denying preliminary injunction and declining to apply the imminent insolvency exception even though the defendant company had "generated almost no revenue from its inception [and] has never earned a profit since its formation," and its "independent auditors have qualified the company's financial statements as a 'going concern.'"); *General Transp. Servs. Inc. v. Kemper Ins. Co., No. 5:03-CV-620, 2003 U.S. Dist. LEXIS 12630, 2003 WL 21703625, at *3-4 (N.D.N.Y. June 25, 2003)* (denying a preliminary injunction and finding that "although Plaintiff arguably raises questions about [the defendant's] present financial condition, its assertions fall far short of establishing that [the defendant] is in 'imminent' danger of becoming insolvent," even where the defendant's credit rating had been downgraded to "C++" and the defendant had defaulted on $ 700 million of its notes and laid off 1,000 of its 7,000 employees)). Accordingly, the [**27] Court finds that plaintiff has fallen short of establishing WBC KS' imminent insolvency so as to establish a risk of irreparable injury. Therefore, because "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm," *Sampson v. Murray, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974)*, the Court rejects plaintiff's alleged monetary injury as a basis for a stay of the *vacatur* pending appeal. [11]

> 11    Plaintiff also cites to *Swift Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 689, 70 S. Ct. 861, 94 L. Ed. 1206 (1950)*, in support of its argument regarding irreparable harm. Specifically, plaintiff cites *Swift* for the proposition that "[a]ppellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible." *Id. at 689*. The Court finds that *Swift*, and the quotation therefrom, are not relevant to the irreparable harm inquiry in the instant, case. *Swift* addressed the issue of whether "the order vacating the attachment was not a final order and therefore not reviewable" by the appellate court. *Id. at 688*. [**28] By contrast, the issue here is whether equity favors a stay of the *vacatur* pending appeal. Furthermore, the circumstances of *Swift* -- involving the attachment of a vessel -- contrast significantly with those of the instant case, wherein the *vacatur* relates exclusively to the release of security posted by defendants. Thus, as discussed herein, the Court finds that the concern enunciated in *Swift* is absent from the instant case -- there is no significant risk that plaintiff's appeal will prove an "empty rite," at least where plaintiff does not seek to attach a

528 F. Supp. 2d 186, *; 2007 U.S. Dist. LEXIS 77953, **;
2008 AMC 43

vessel and the Court may direct defendant to post security following an appeal, if necessary.

### 3. Substantial Harm to Defendant

Defendant asserts that, if a stay is entered, it will suffer substantial harm in the form of the continued cost of maintaining the surety bond during the pendency of an appeal, and the consequent loss of "the use of a percentage of its credit facility." (Defs.' Mem. at 9-10.) In response, plaintiff asserts that a stay will not result in substantial harm to defendant because plaintiff is prepared to post a bond to cover the cost of maintaining the surety bond during the appeal. (Pl.'s Mem. at 14-15.) The Court [**29] finds that this factor weighs in favor of granting a stay. Thus, assuming *arguendo* that plaintiff could post a sufficient bond to satisfy the Court, any financial harm suffered by defendant is unlikely to be substantial.

### 4. The Public Interest

Plaintiff asserts that the public's interest in ensuring the enforcement of foreign judgments -- such as the judgment plaintiff expects to obtain against defendant in the courts of Angola -- favors a stay of the *vacatur* pending appeal. The Court rejects this argument. Initially, the Court notes that plaintiff fails to cite any authority [*196] in support of the alleged public interest. In addition, it is beyond doubt that plaintiff has yet to obtain a judgment against defendant in the Angolan action. As such, the Court finds that plaintiff presents mere speculation as to the presence of a public interest favoring a stay of the *vacatur* and, thus, could reject plaintiff's argument on that basis alone.

However, even assuming *arguendo* that there is a public interest in the enforcement of foreign judgments *and* that plaintiff will eventually obtain such a judgment, plaintiff has failed, as discussed *supra*, to establish that it will be unable to collect on any future judgments obtained against WBC KS in this action. Therefore, there is no basis for this Court to find that such an interest would be adversely effected by denying a stay of the *vacatur*.

### B. Weighing the Factors

On balance, the above-cited factors weigh against granting a stay of the *vacatur* pending appeal. Although the factor concerning substantial harm to defendant slightly favors a stay, the remaining factors weigh heavily against a stay of the *vacatur*. First, the factor regarding plaintiff's possibility of success on appeal weighs against a stay; that is, plaintiff's possibility of success on appeal, although not insignificant, does not appear to be "substantial." Second, most significantly, the factor concerning irreparable injury overwhelmingly weighs against a stay of the *vacatur*; as discussed *supra*, plaintiff has failed to establish any legally cognizable type of irreparable injury sufficient to justify a stay pending appeal. Finally, plaintiff has failed to establish any public interest favoring a stay.

### C. Plaintiff's Request for a Temporary Stay

The Court grants plaintiff's request for a temporary stay of the *vacatur* so that plaintiff may apply to the Court of Appeals for the Second Circuit for a stay pending appeal, pursuant to *Rule 8(a) of the Federal Rules of Appellate Procedure. See, e.g., In re Albicocco, No. 06-CV-3409 (JFB), 2006 U.S. Dist. LEXIS 65359, 2006 WL 2620464, at *5 (E.D.N.Y. Sept. 13, 2006)* (denying a stay pending appeal under *Rule 62*, but granting a temporary stay so that a party could apply to the Court of Appeals for a stay); *Motorola Credit Corp. v. Uzan, 275 F. Supp. 2d 519, 525 (S.D.N.Y. 2003)* (same); [**30] *Paris v. (1) Dep't of Nat'l Store Branch (1) Vietnam, No. 99-CV-8607 (NRB), 2000 U.S. Dist. LEXIS 8331, 2000 WL 777904, at *5 (S.D.N.Y. June 15, 2000)* (same); *LNC Investments, Inc. v. Republic of Nicaragua, No. 96-CV-6360 (JFK) 2000 U.S. Dist. LEXIS 7738, 2000 WL 729216, at *2 (S.D.N.Y. June 6, 2000)* (same). If plaintiff fails to apply to the Court of Appeals by Friday, October 19, 2007, the temporary stay shall expire. However, if plaintiff applies for a stay pending appeal with the Court of Appeals before that deadline, this Court's temporary stay will remain in effect until the stay motion before the Second Circuit is decided.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for a stay of the *vacatur* pending appeal is DENIED. Plaintiff's request for a temporary stay of the *vacatur* pending the Court of Appeals' resolution of a motion to stay is GRANTED.

SO ORDERED.

RICHARD J. SULLIVAN

United States District Judge

Dated: October 12, 2007

New York, NY