UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARIMED SHIPPING INC.                                :

       Plaintiff,                                :          08 CV 4228 (VM)
                                                                                ECF CASE
   - against -                                      :

PERSIAN GULF SHIPPING CO. INC. a/k/a          :
PERSIAN GULF SHIPPING CO. LTD. a/k/a
PGSC and PGSC MARINE LTD.,                      :

      Defendants.                             :
-----------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO VACATE ATTACHMENT


TISDALE LAW OFFICES, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 (phone)
(212) 869-0067 (fax)

*Attorneys for Plaintiff*
*Marimed Shipping Inc.,*

Lauren C. Davies, Esq.
Thomas L. Tisdale, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT................................................................................1

FACTS ...............................................................................................................2

ARGUMENT
POINT I
PLAINTIFF HAS MET ITS BURDEN OF PROOF ...........................................................3

POINT II
THE DEFENDANTS ARE NOT "FOUND" WITHIN IN THE DISTRICT ........................4

  A.  REGISTRATION TO DO BUSINESS IN NEW YORK IS NOT
      ACTUALLY DOING BUSINESS IN NEW YORK .......................................................5

  B.  PGSC'S CONTACTS WITH NEW YORK ARE
      INSUFFICIENT TO SATISFY THE PRESENCE TEST ..............................................8

  C.  REGISTERING TO DO BUSINESS IN NEW YORK WITH THE
      DEPARTMENT OF CORPORATIONS IS AKIN TO THE FILING
      OF A GENERAL APPEARANCE AND DOES NOT RENDER A
      DEFENDANT PRESENT FOR THE PURPOSES OF RULE B ................................11

CONCLUSION .................................................................................................16

## PRELIMINARY STATEMENT

Plaintiff MARIMED SHIPPING INC. (hereinafter "Marimed" or "Plaintiff") submits this Memorandum of Law in opposition to Defendants' Persian Gulf Shipping Co. Inc. a/k/a Persian Gulf Shipping Co. Ltd. a/k/a PGSC (hereinafter "PGSC") and PGSC Marine Ltd. (hereinafter "PGSC Marine")(collectively referred to as "Defendants") Motion to Vacate the maritime attachment issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B").  Defendants' Motion to Vacate should be denied because: (1) Plaintiff has sustained its burden herein to establish that the Defendants are not present in New York; and (2) the Plaintiff has shown, and Defendants do not contest, that all the other requirements for obtaining a Rule B attachment are in place.  When considered in light of the history and purpose of Rule B as well as this Court's decisions in *VTT Vulcan Petroleum v. Langham-Hill Petroleum, Inc.,* 684 F. Supp. 389, 390 (S.D.N.Y. 1988) and *Erne Shipping v. HBC Hamburg Bulk Carriers,* 409 F. Supp. 2d 427 (2006), it is clear that mere registration to do business in New York is not equivalent to actually doing business in New York and finding otherwise will enable scores of "reluctant-to-pay" Rule B defendants, including the Defendants herein, to easily evade this remedy.

## FACTS

The facts pertaining to the instant Motion to Vacate the process of maritime attachment and garnishment are more fully set forth in the accompanying Declaration of Lauren C. Davies dated May 30, 2008 (hereinafter "Davies Decl."), and are incorporated by reference herein.

## ARGUMENT

### POINT I

### PLAINTIFF HAS MET ITS BURDEN OF PROOF

Under Supplemental Rule B, "an order of maritime attachment must issue upon a minimal prima facie showing" provided that the defendant cannot be "found within" the district in which the assets are sought to be attached. *Fed. R. Civ. P. Supp. Rule B.* But under Supplemental Rule E(4)(f), any person claiming an interest in the attached property shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the attachment should not be vacated or other relief granted consistent with these rules. *Fed. R. Civ. P. Supp. Rule E(4)(f).* It is clear from the text of Rule E(4)(f) that the party having obtained the maritime attachment, bears the burden of showing that the attachment should not be vacated. *Id.*

However, as recently confirmed by the Second Circuit Court of Appeals in *Aqua Stoli, supra,* the Rule(E)(4)(f) hearing is not intended to resolve the dispute between the parties, but is to determine if the technical requirements of the Rule were met. Thus, as long as the plaintiff can establish that it has alleged a prima facie maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment should be upheld. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 2006 U.S. App. LEXIS 19302, at *28-29 (2d Cir. 2006).

It is unequivocal that an attachment under Rule B serves the dual purpose of (1) obtaining jurisdiction over the defendant *in personam* through attachment of his property within the district; and (2) to assure satisfaction in case the suit is successful. *Manro v. Almeida*, 23 U.S. (10 Wheat.) 473, 489 (1825); *Swift & Co. Packers v. Compania Columbia*, 339 U.S. 684, 693

3

(1950); *Winter Storm*, 310 F.3d 263, 268 (2d Cir. 2002), *citing Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 48 (2d Cir. 1996).

Supplemental Admiralty Rule B provides in relevant part:

> In an *in personam* action…[i]f a defendant is not found within the district, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process.

Fed.R.Civ.P. Adm., Supp. B(1)(a).

It is undisputed that the Plaintiff's Verified Complaint herein sets forth a cause of action cognizable in admiralty for the breach of a maritime contract of a charter party. It is also clear, despite PGSC's registration and Defendants' protests to the contrary, that at the time of the filing of the Verified Complaint, the Defendants' could not be "found" within the Southern District of New York for the purposes of Rule B. Accordingly, maritime attachment pursuant to Rule B was a form of relief available to Marimed in this matter, and this Court's Order directing the attachment of Defendants' property within the District was proper.

### POINT II

### <u>THE DEFENDANTS ARE NOT "FOUND" WITHIN IN THE DISTRICT</u>

Defendants' motion to vacate this attachment is based only on the assertion that PGSC could be "found" for the purposes of Rule B at the time this action was filed. PGSC did not, and does not, have the requisite "presence" within the District to satisfy the Second Circuit's well known test for same. *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir. 1963). Further, despite the fact that PGSC and PGSC Marine made a joint motion to vacate, the Defendants do not contest, and therefore concede, that PGSC Marine is not present in New York. Thus, the only question before the Court on this motion is whether PGSC can be found within this district for the purposes of Rule B. The answer is no.

4

### A.   REGISTRATION TO DO BUSINESS IN NEW YORK IS NOT ACTUALLY DOING BUSINESS IN NEW YORK

To obtain a maritime attachment, Supplemental Rule B requires a showing that the defendant cannot be found within the district where the attachment is sought. *Supp. Adm. Rule B.* The courts have produced a two-prong test in order to determine "presence." A foreign defendant is only deemed present if that defendant 1) can be located within the district in terms of jurisdiction, and 2) can be found for service of process. *Seawind Compania, S.A. v. Crescent Line, Inc.,* 320 F.2d 580, 582 (2d Cir. 1963). If a foreign defendant fails either prong, then that defendant is not considered present and the attachment is valid. That is, the defendant must be able to accept process *and* be "'engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process.'" *VTT Vulcan Petroleum v. Langham-Hill Petroleum, Inc.,* 684 F. Supp. 389, 390 (S.D.N.Y. 1988), *quoting Seawind Compania.,* 320 F.2d at 583.

The presence test for corporations requires more than isolated business contacts within the jurisdiction.[1] *See Seawind,* 320 F.2d at 583 (stating that although the defendant's corporate minutes and stock transfer books were kept in the district, and all of the corporation's officers were present in the district, that this volume of activity would not likely by itself, confer "presence" under Rule B). Thus "a defendant corporation is found within the jurisdiction of a federal district court if in the recent past it has conducted *substantial* commercial activities in the district and *will probably continue* to do so in the future." *Bay Casino, LLC v. M/V Royal Empress,* 20 F.Supp.2d 440, 451 (S.D.N.Y. 1998)(emphasis added).

Past business activities in New York or mere formalities of registration, by themselves or in combination, will not satisfy the presence test. *See VTT Vulcan Petroleum v. Langham-Hill*

---

[1]    Isolated business contacts will not be enough to find presence where the conflict does not arise out of those isolated transactions. *See Seawind,* 320 F.2d at 583. PGSC does not allege that such is the case.

*Petroleum, Inc.*, 684 F. Supp. 389 (S.D.N.Y. 1988)(holding that prior business activity in New York combined with a current registration to do business in New York, and a New York agent upon which to serve process do not amount to sufficient activity within the district to satisfy jurisdictional presence test).

More recently, in *Erne Shipping v. HBC Hamburg Bulk Carriers*, 409 F. Supp. 2d 427 (2006), this Court heard a case with facts nearly identical to those in the instant matter. In *Erne*, plaintiff shipping company obtained an ex parte order for process of maritime attachment against a defendant who had registered to do business in New York and designated an agent to accept service of process. *Id.* at 429-430. As here, the defendant in *Erne* allegedly had several contracts with New York businesses including (as here) contracts involving vessels calling at New York ports and contracts with New York based shippers. *Id.* at 434. The Court in *Erne* refused to vacate the attachment finding that, despite the registration and some New York contracts, the defendant had no "continuous and systematic" contacts with the State of New York. *Id.* at 433, which is in accord with the Second Circuit's opinion in *Seawind, supra.*

In their moving papers, the Defendants gloss over this circuit's now well established test for presence as they are unable to satisfy same. Further, they attempt to discount Magistrate Judge Gorenstein's[2] well reasoned opinion by stating that it is a stand alone case. It is no secret that there are only three cases that deal expressly with whether registration satisfies Rule B's presence test and that the decisions in these three cases have produced a split of authority in this district. Only Magistrate Judge Gorenstein's decision in *Erne* however, properly relies upon and applies the Second Circuit's presence test prescribed in *Seawind* and, as such, *Erne* is the decision which must be followed here.

---

[2] It should be noted that *Erne* was referred to Magistrate Judge Gorenstein pursuant to 28 U.S.C. §636(c).

In *Express Sea Transport v. Novel Commodities S.A.,* No. 06 Civ. 2404 (GEL)(S.D.N.Y. May 5,1006), Judge Lynch disagreed with the Court in *Erne* finding Magistrate Gorenstein's decision to be in conflict with *Seawind. See Transcript of the Decision in Express Sea Transport* at 9 *annexed to the Declaration of Garth S. Wolfson as Exhibit "E."* This interpretation is based upon the premise that registration to do business unequivocally subjects defendants to the jurisdiction of the courts of this district. In Judge Lynch's opinion, defendant's thus have a choice: "either they subject themselves to the courts of the district or they open up the possibility that their property in the district will be attached." *Id.* at 10. This is simply not the case. The Second Circuit requires that a defendant be "engaged in sufficient activity in the district to subject it to jurisdiction." *Seawind, supra,* at 583. Further, "a defendant without meaningful ties to the forum state will not be subjected to binding judgments within its jurisdiction" under the Due Process Clause. *Erne, supra,* at 433; *quoting Metro. Life Ins. v. Robertson-Ceco Corp.,* 84 G.3d 560, 567 (2d Cir. 1996). "Thus, a state may assert "general jurisdiction" – that is, jurisdiction that does not arise out of the particular claim sued upon – where the defendant's contacts with the forum state are "continuous and systematic." *Erne, supra; quoting Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 40, 415-16 (1984); *accord Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 127 (2d Cir. 2002); *see further U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd.*, 241 F.3d 135, 152 (2d Cir. 2001). Therefore, defendants such as PGSC who do not have continuous and systematic contacts with New York will not be subject to the general jurisdiction of the Courts of New York by virtue of their registration alone.

The only other case upon which Defendants rely is *Centauri Shipping, Ltd. v. Western Bulk Carriers KS,* 528 F. Supp. 2d 197 (S.D.N.Y. 2007) – which is based on the reasoning found

in *Express Sea* above and is similarly flawed. *Centauri* is further distinguishable from the instant

action as the Plaintiff therein failed to inform the Court of the defendant's registration to do

business in the district and, thus, much of the thinking was spent considering whether to impose

sanctions for the Plaintiff's purported "clerical error." *Id.* Moreover, the defendant in *Centauri,*

"consented, on the record, to the jurisdiction of this Court for the purposes of any and all

proceedings relating to this action." *Centauri v. Western Bulk Carriers KS,* 528 F. Supp. 2d 186,

192 (S.D.N.Y. 2007). PGSC has done nothing of the sort. In addition, no evidence was

proffered absent the other contacts the defendants had with the jurisdiction in addition to

registration to do business. Furthermore, the Court in *Centauri* did not consider the impact of

allowing registration to be equal to actually doing business in New York for the purposes of Rule

B or whether same comports with the history and purpose of the Rule. As detailed more fully

below, the *Centauri* decision has produced a tidal wave of companies rushing to register with the

New York Department of State for the express purpose of evading Rule B. Like Western Bulk

and PGSC, these companies have no continuous or systematic ties to this state and are taking

advantage of the loophole kept alive by this Court in *Centauri.* Plaintiff respectfully requests

that this Court follow the reasoning found in *Erne* and close this loophole.

### B.    PGSC'S CONTACTS WITH NEW YORK ARE INSUFFICIENT TO SATISFY THE PRESENCE TEST

Here, it is evident that PGSC did not meet the first prong of the "presence" test for Rule

B attachment at the time the action was filed. That is, PGSC did not conduct sufficient activity

within the district to be "found" for jurisdictional purposes. PGSC's very limited "contacts"

purportedly consist of having registered with the New York State Department of Corporations as

a foreign limited partnership, having a well known, Rule B savvy, maritime law firm as their

agent for service in New York,[3] engaging in sporadic contracts for the charter of vessels to the United States, occasionally using a brokerage and/or shipbroker service, and entering into contracts with a handful of parties who have New York offices. *See Declaration of Masood Tariq ("Tariq Decl."), annexed to the Declaration of Garth Wolfson ("Wolfson Decl.") as Exhibit "D."*

With regard to PGSC's New York registration with Department of Corporations, this Court has previously held in *Erne Shipping*, that being registered to do business in New York, even when combined with past business undertakings, is not enough to satisfy the jurisdictional presence test. *Erne, supra*, 436-437; *See also, VTT Vulcan Petroleum*, 684 F. Supp. at 392. Far more than a mere registration to do business in the state is required to satisfy jurisdictional presence under Rule B. A defendant must be "engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of "presence" in the jurisdiction." *Erne, supra*, at 433; *quoting McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981).

In assessing whether a corporation has systematically and continuously engaged in business in New York, the Second Circuit has dictated that the following factors be focused on: "whether the company has an office in the state, whether it has any bank accounts or other property in the state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals permanently located in the state to promote its interest." *Erne, supra*, at 433-434; *quoting Wiwa v. Royal Dutch Petroleum Co.*, 226 F. 3dd 88, 98 (2d Cir. 2000)(citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985).

---

[3] It is more than mere coincidence that the defendant redelivered the Vessel on April 11, 2008, twenty-three days after the agreed upon redelivery date of March 19, 2008 and registered to do business in New York just the day before on April 10, 2008. *See Davies Decl.* This is especially true as PGSC was allegedly doing business in New York for the full four years that it has been incorporated in Anguilla. *See Tariq Decl.* Defendant's attempt to preempt a Rule B attachment of its property because of this dispute is clearly established by the Defendant's own actions.

**None** of these factors are present here. PGSC does not dispute that it has no office in New York, no property in the state, no phone listings or employees located in the state and no advertising in New York. As in *Erne Shipping,* the defendant herein has only engaged in "a few contractual arrangements ... that involve, in part, New York companies." *Erne, supra,* at 434. Exactly as in *Erne,* according to the declaration of Mr. Tariq, PGSC has occasionally entered into shipping contracts with United States owners, employed the services of a New York ship broker and has a New York client. *See generally Tariq Decl.* In *Erne,* the Court held the following:

> Here, there is nothing "continuous and systematic" in HBC's contacts with the State of New York. ... HBC has no office in the state. It has no property in the state. It has no phone listing or employees located in the state. It does no advertising in the state. It has caused an employee to come to New York State to solicit business exactly once. Essentially, all it has done is enter into a few contractual arrangements each year ... that involve New York companies. ... While some of these contracts have caused vessels to dock within New York State's jurisdiction, these visits have no great jurisdictional significance beyond the revenue that is generated to New York from the underlying contracts. Even the contracts with New York-based shippers must be considered in light of the fact that they involved shipments to other locations. Only one contract, involving HBC's subscription to receive weather information, is ongoing. HBC's entry into two contracts in the past that contained agreements to arbitrate in New York is of little significance, as are its plans to someday open an office in New York.

*Erne, supra,* at 434. The Court went on to find that, "taken together, these contacts fall far short of the "continuous and systematic" activity required by New York law or the Due Process Clause to subject a foreign defendant to suit on a cause of action unrelated to its contacts." *Id.* at 434. Thus, absent further supporting evidence, whether PGSC considers itself to be doing business in New York is of no consequence to the Court's analysis of PGSC's "presence" within the District for Rule B purposes. The Court must consider PGSC's actual present, continuous and systematic business activity in the jurisdiction, of which PGSC has offered no evidence at all, nor has Plaintiff found any.

10

Finally, as shown above, PGSC's recent, isolated contacts with New York are insufficient to satisfy the presence test for Rule B. Thus, PGSC cannot be found with the district and the motion to vacate the attachment should be denied.

### C.  REGISTERING TO DO BUSINESS IN NEW YORK WITH THE DEPARTMENT OF CORPORATIONS IS AKIN TO THE FILING OF A GENERAL APPEARANCE AND DOES NOT RENDER A DEFENDANT PRESENT FOR THE PURPOSES OF RULE B.

It is now axiomatic that consenting to personal jurisdiction in a case does not render the Rule B presence test moot. Furthermore, the right to attachment is not defeated by the filing of a general appearance in that case or a related case. *See HBC Hamburg Bulk Carriers GMBH & CO. KG v. Proteinas Y Oleicos S.A. DE C.V.*, 2005 U.S. Dist. LEXIS 8009, *16-17 (S.D.N.Y. 2005); *Oilmar Co. Ltd*, 2003 U.S. Dist. LEXIS 14350, at *9 (holding that filing a general appearance in a related case will not satisfy the jurisdictional prong of the Rule B presence test.) Similarly, merely registering to do business in New York does not equate to actually doing business in this state, nor does it make that entity present for the purposes of Rule B.

Attachment serves two main purposes. First, it secures jurisdiction over the defendant in an action.; and, second it provides a means to assure satisfaction of a future judgment. *Proteinas*, 2005 U.S. Dist. LEXIS 8009, at * 15. It is no longer contested that entering a general appearance or consenting to personal jurisdiction would allow a defendant to circumvent the "presence" test required under Rule B as defendants could then easily "defeat an otherwise valid Rule B attachment simply by filing a lawsuit for the purpose of entering an appearance in the district." *Oilmar*, 2003 U.S. Dist. LEXIS 14350, at *9. This trick would deprive aggrieved plaintiffs from obtaining security against defendants that are not otherwise present in the district and who are thus more likely to evade judgment. *See Id; see also Winter Storm*, 310 F.3d at 268 (noting that one of the rationales for maritime attachment is "to assure satisfaction if a suit is

11

successful"). The recent trend of shipping companies registering to do business in New York through the New York maritime law firms that are active participants in this district's Rule B practice is a similar trick and should not be countenanced.

It is well-established that consenting to jurisdiction will not void an attachment where consent was given solely for the purpose of evading the attachment. *Parkroad Corp. v. China Worldwide Shipping Co, Ltd.*, 2005 U.S. Dist. LEXIS 11122 (S.D.N.Y. 2005). In the *Parkroad* case, Judge Daniels refused to vacate the attachment on account of the general appearance of the defendant reasoning that:

> [t]he defendant's general appearance by counsel in this matter does not serve as a bar to the issuance of an order for process of maritime attachment. The maritime attachment serves two purposes. It "provides a mean[s] to assure satisfaction if a suit is successful" and it may provide a means "to insure a defendant's appearance in an action." *Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 48 (2d Cir. 1996) (citations omitted). ... "The right to the attachment is not defeated by the filing of a general appearance. But for the security of an attachment, because there is no real presence here, the appearance will be of no assistance to plaintiff in enforcing its rights, and it is not equivalent to being found within the district." *See, Nikki Maritime*, 558 F. Supp. at 1357; *see also, HBC Hamburg Bulk Carriers GmbH & Co. KG v. Proteinas y Olecios S.A. de C.V.*, 2005 U.S. Dist. LEXIS 8009, 2005 WL 1036127, *5 (S.D.N.Y. May 4, 2005) ("Without security, the filing of an appearance by a foreign defendant provides little assurance that any favorable judgment would be satisfied.")

*Id.* at 11122, *2. In *HBC Hamburg Bulk Carriers GmbH & Co. KG v. Proteinas y Olecios S.A. de C.V.*, 2005 U.S. Dist. LEXIS 8009, 2005 WL 1036127 (S.D.N.Y. 2005), Judge Buchwald reached the same conclusion finding that:

> the filing of an appearance does not defeat the subsequent attachments by HBC. Without security, the filing of an appearance by a foreign defendant provides plaintiff little assurance that any favorable judgment will later be satisfied. "But for the security of an attachment, because there is no real presence here, the appearance will be of no assistance to plaintiff in enforcing its rights, and is not equivalent to being found within the district." *Constr. Exp. Enters. v. Nikki Mar., Ltd.*, 558 F.Supp. 1372, 1375 (S.D.N.Y. 1983).

*HBC Hamburg Bulk Carriers, supra* at 2005 U.S. Dist. LEXIS 80009, \*5; *see also Construction Exporting Enterprises, UNECA v. Nikki Maritime Ltd.*, 558 F. Supp. 1372, 1375 (S.D.N.Y. 1983)( finding that "because there is no real presence here, the appearance will be of no assistance to the plaintiff in enforcing its rights, and is not equivalent to being found within the district.")

Jurisdiction, for Rule B purposes is defined as being "engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept service." *Seawind*, 320 F.2d *supra* at 583. Therefore, jurisdiction for the purposes of Rule B presents a distinct inquiry from a jurisdictional inquiry in a non-Rule B context. *VTT Vulcan Petroleum S.A. v. Langham-Hill Petroleum. Inc.*, 684 F. Supp. 389, 390 (S.D.N.Y. 1988). While acknowledging that an agent for service of process normally provides a basis for *in personam* jurisdiction, Judge Leisure in *VTT Vulcan* held that the presence of an agent alone does not support the jurisdictional prong for vacating an attachment. *Id.* at 390, n.1. *See also, Bonito Offshore II, supra;* and *Verton Navigation, Inc. v. Caribica Shipping, Ltd.*, 1991 AMC 1733 (S.D.N.Y. 1991) (shipping company was not present in the jurisdictional sense at the time of the attachment, as it did not contend that it was doing business in New York pursuant to N.Y. C.P.L.R. § 301, and the charter party was not executed within the district).

The District of Connecticut also recognizes the distinction between the Rule B context and other types of cases with regard to *in personam* jurisdiction. *Oilmar Co. Ltd. v. Energy Transport Ltd.,* 2003 U.S. Dist. LEXIS 14350, 2003 AMC 2366 (D. Conn. 2003). In holding that a defendant's general appearance after the issuance of an Order for a Writ of Attachment was issued did not defeat plaintiff's right to attachment, the Court noted that what may satisfy due process concerns in other contexts does not necessarily satisfy due process concerns in Rule

13

B cases. *Id.* The Court reasoned that the purposes of Rule B would be undermined if defendants were allowed to simply file a lawsuit to merely appear in the district to defeat Rule B. *Id.* This is also the case with registration to do business with the New York Department of Corporations.

In acknowledging the distinction between jurisdictional requirements in other contexts and those required to defeat a maritime attachment, the cases cited herein from the Southern District of New York have been faithful to the jurisdictional requirements set forth by the Second Circuit in *Seawind* and more recently confirmed by the Second Circuit in *Winter Storm* and *Aqua Stoli* that a defendant must be engaged in *sufficient activity* in the district to satisfy the jurisdictional prong of the "found within the district" test. *See e.g. Aqua Stoli, supra,* at 443 (quoting *Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119, 122 (S.D.N.Y. 1979); citing Seawind, supra,* at 582).

One can only imagine the crippling effect the rule urged by Defendant in the instant case would have on Rule B attachments. Registration to do business with the New York Department of State requires only the completion of a simple form and the payment of a $225 fee. *See Davies Decl., Exhibits "3" and "4."* Furthermore, one can withdraw its own registration simply, easily and instantaneously, and re-register whenever it desires to do so. *See Davies Decl. Exhibit "5."* This cannot be what the drafters of Rule B intended. And this is the position that Judge Leisure and Magistrate Gorenstein have rejected. "Without maritime attachments, defendants, their ships, and their funds could easily evade the enforcement of substantive rights of admiralty law." *Aurora, supra,* 85 F.3d at 48.

It is significant that PGSC has not made itself amenable to suit for all claims in New York because it has not waived its jurisdictional defenses. PGSC's filing with the New York Department of Corporations is not a waiver of its jurisdictional defenses in future claims. The

14

effect of filing is two-fold: first, it means that PGSC considers *itself* doing business in New York; and second, it gives the address of where the Secretary of State will forward copies of any accepted process. Unlike an entity incorporated in New York, PGSC will not be subject to all suits in New York unless a plaintiff can satisfy the minimum contacts test of *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 90 L. Ed. 95, 66 S. Ct. 154 (1945)). However, PGSC has not sought to waive all jurisdictional defenses in New York by incorporating here, or engaging in substantial business. Rather, PGSC merely filed a general appearance in this action in the hope of evading attachment.

PGSC has provided no evidence that it has a systematic or continuous presence in New York, or has any plans to do so in the future. Its registration to do business in New York was created only weeks before the filing of this action in a thinly veiled attempt to avoid the effects of maritime attachments. That registration as a foreign corporation, can be revoked at any time. *See Davies Decl. Exhibit "5."* PGSC has not subjected itself to suit for all claims in New York and has posted no security or bond in the instant action.

PGSC should not be allowed to circumvent the presence requirements of Rule B to avoid attachment. Allowing same would eviscerate maritime attachment. A ruling in PGSC's favor would be antithetical to the congressional intent of providing an attachment remedy in the first place and should be avoided.

## CONCLUSION

For all the foregoing reasons, the motion to vacate the attachment should be denied.

Dated: May 30, 2008
      New York, New York

The Plaintiff,
MARIMED SHIPPING INC.,

By: _____

Lauren C. Davies (LD 1980)
Thomas L. Tisdale (TT 5263)
TISDALE LAW OFFICES, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 (Phone)
(212) 869-0067 (Fax)
ldavies@tisdale-law.com
ttisdale@tisdale-law.com

16

## AFFIRMATION OF SERVICE

I hereby certify that on May 30, 2008, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____
Lauren C. Davies (LD 1980)