UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIMED SHIPPING INC.                                      :

           Plaintiff,                          :        08 CV 4228 (VM)
                                           ECF CASE

        - against -                              :

PERSIAN GULF SHIPPING CO. INC. a/k/a                       :
PERSIAN GULF SHIPPING CO. LTD. a/k/a
PGSC and PGSC MARINE LTD.,                                 :

           Defendants.                         :
------------------------------------------------------------X

### DECLARATION OF LAUREN C. DAVIES
### IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
### MOTION TO VACATE MARITIME ATTACHMENT

      LAUREN C. DAVIES declares under penalty of perjury of the laws of the United States

of America as follows:

      1.     I am an attorney with the firm, Tisdale Law Offices, LLC, counsel for the

Plaintiff herein, Marimed Shipping Inc. ("Marimed" or "Plaintiff") and I make this declaration

based upon my personal knowledge and upon information and documents furnished to me by

Plaintiff that I believe to be true and accurate.

      2.     I submit this Declaration in Support of Plaintiff's Opposition to Defendants'

Persian Gulf Shipping Co. Inc. a/k/a Persian Gulf Shipping Co. Ltd. a/k/a PGSC (hereinafter

"PGSC") and PGSC Marine Ltd. (hereinafter "PGSC Marine")(collectively referred to as

"Defendants")Motion to Vacate this maritime attachment.

      3.     At all material times, Plaintiff was and still is an entity duly organized and

existing by virtue of foreign law with a principal place of business in Monrovia, Liberia.

4. Upon information and belief, at all material times, Defendant PGSC was and still is an entity duly organized and existing by virtue of the laws of Anguilla.

5. Upon information and belief, at all material times, Defendant PGSC Marine was and still is an entity duly organized and existing by virtue of the laws of Anguilla.

6. By a time charter party dated June 21, 2007, Plaintiff, disponent owner, chartered the motor vessel "CENTAURUS" (hereinafter the "Vessel") to the Defendant PGSC, as charterer, for a period of about 6 to 8 months ± 15 days in charterers' option via safeports.

7. Certain disputes arose between the parties regarding the Vessel's late redelivery, PGSC's failure to pay hire and other breaches of the charter party.

8. Specifically, PGSC has failed to pay hire in the total principal sum of $75,098.83. *See Verified Complaint, Exhibit "1," annexed hereto as Exhibit "1."*

9. Furthermore, PGSC redelivered the Vessel on April 11, 2008, twenty-three (23) days after the agreed upon redelivery date of March 19, 2008.

10. As a result, the Plaintiff has suffered damages in the principal sum of $992,000 for the lost opportunity of securing further employment for the Vessel at the market rate of $45,000 per day for the period from March 19, 2008 to April 20, 2008 less the hire payable to head owners for this period.

11. Further, the Defendant was unjustly enriched by the profits made by the Vessel during the period from March 19, 2008 to April 20, 2008 and, as such, Plaintiff has suffered damages in the estimate principal sum of $1,100,000 for the defendant PGSC's unjust enrichment.

12.    As a result of Defendant PGSC's breach of the charter party contract, Plaintiff has suffered losses in the total principal sum of **$2,167,098.80**, as best can now be estimated, exclusive of interest, recoverable costs and reasonable attorneys' fees.

13.    Despite due demand, the Defendant has failed to pay the sums due and owing to the Plaintiff under the charter party.

14.    Pursuant to the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

15.    In accordance with the charter party, the Plaintiff has commenced arbitration and appointed its arbitrator.

16.    In order to obtain personal jurisdiction over the Defendants and to obtain security for its maritime claims, Plaintiff commenced this action on May 2, 2008, by the filing of a Verified Complaint which included a prayer for an Ex-Parte Order for Process of Maritime Attachment pursuant to Rule B [of the Supplemental Rules for Certain Admiralty and Maritime Claims].

17.    On May 5, 2008, the Court issued an Ex-Parte Order of Maritime Attachment and Garnishment. The Ex-Parte Order authorized Plaintiff to attach Defendants' property located within this judicial district and belonging the Defendants up to the sum sought.

18.    The Ex-Parte Order and Process of Maritime Attachment and Garnishment ("PMAG") named garnishee banks believed to have assets due and owing to the Defendants. The Ex-Parte Order and PMAG were served upon the garnishee banks.

19.    To date, no funds of the Defendants have been restrained pursuant to the Ex-Parte Order and Process of Maritime Attachment and Garnishment in this matter.

20.    Attached hereto as Exhibit "2" is the State of New York Department of State Registration of PGSC to do business in New York.

21.    Attached hereto as Exhibit "3" are the instructions from the New York Division of Corporations webpage which indicate the requirements for obtaining authority to do business in the State of New York.

22.    Attached hereto as Exhibit "4" are the forms which must be filled out and filed by the corporation who desires to register with the New York Department of State.

23.    Attached hereto as Exhibit "5" is the form by which a corporation may surrender its authority to do business in New York State.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 30, 2008.

Lauren C. Davies

4

## **AFFIRMATION OF SERVICE**

I hereby certify that on May 30, 2008, a copy of the foregoing DECLARATION OF

LAUREN C. DAVIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO

VACATE MARITIME ATTACHMENT was filed electronically and served by mail on anyone

unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by

operation of the Court's electronic filing system or by mail to anyone unable to accept electronic

filing. Parties may access this filing through the Court's CM/ECF system.


By:_____/s/_____
Lauren C. Davies

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIMED SHIPPING INC.                                    :

       Plaintiff,                                   :

     - against -                                        :

PERSIAN GULF SHIPPING CO. INC. a/k/a                      :
PERSIAN GULF SHIPPING CO. LTD. a/k/a
PGSC and PGSC MARINE LTD.,                                :

       Defendants.                                  :
------------------------------------------------------------X



08 CV
RECEIVED
MAY 02 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## VERIFIED COMPLAINT

The Plaintiff, Marimed Shipping Inc. (hereinafter "Plaintiff"), by its attorneys, Tisdale

Law Offices, LLC, as and for its Verified Complaint against the Defendants, Persian Gulf

Shipping Co. Inc. a/k/a Persian Gulf Shipping Co. Ltd. a/k/a PGSC (hereinafter "PGSC") and

PGSC Marine Ltd. (hereinafter "PGSC Marine")(collectively referred to as "Defendants") allege,

upon information and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Federal Rule of

Civil Procedure 9(h) and 28 United States Code § 1333.

2.     At all material times, Plaintiff was and still is an entity duly organized and

existing by virtue of foreign law with a principal place of business in Monrovia, Liberia.

3.     Upon information and belief, at all material times, Defendant PGSC was and still

is an entity duly organized and existing by virtue of the laws of Anguilla.

4.     Upon information and belief, at all material times, Defendant PGSC Marine was

and still is an entity duly organized and existing by virtue of the laws of Anguilla.

5.    By a time charter party dated June 21, 2007, Plaintiff, disponent owner, chartered the motor vessel "CENTAURUS" (hereinafter the "Vessel") to the Defendant PGSC, as charterer, for a period of about 6 to 8 months ± 15 days in charterers' option via safeports.

6.    Certain disputes arose between the parties regarding the Vessel's late redelivery, PGSC's failure to pay hire and other breaches of the charter party.

7.    Specifically, PGSC has failed to pay hire in the total principal sum of $75,098.83. *See Hire Statement annexed hereto as Exhibit "1."*

8.    Furthermore, PGSC redelivered the Vessel on April 11, 2008, twenty-three (23) days after the agreed upon redelivery date of March 19, 2008.

9.    As a result, the Plaintiff has suffered damages in the principal sum of $992,000 for the lost opportunity of securing further employment for the Vessel at the market rate of $45,000 per day for the period from March 19, 2008 to April 20, 2008 less the hire payable to head owners for this period.

10.    Further, the Defendant was unjustly enriched by the profits made by the Vessel during the period from March 19, 2008 to April 20, 2008 and, as such, Plaintiff has suffered damages in the estimate principal sum of $1,100,000 for the defendant PGSC's unjust enrichment.

11.    As a result of Defendant PGSC's breach of the charter party contract, Plaintiff has suffered losses in the total principal sum of **$2,167,098.80**, as best can now be estimated, exclusive of interest, recoverable costs and reasonable attorneys' fees.

12.    Despite due demand, the Defendant has failed to pay the sums due and owing to the Plaintiff under the charter party.

–2–

13.     Pursuant to the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

14.     In accordance with the charter party, the Plaintiff has commenced arbitration and appointed its arbitrator.

15.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London proceedings pursuant to English Law.  As best as can now be estimated, Plaintiff expects to recover the following amounts in arbitration:

| | | |
|---|---|---|
| A. | Principal claim: | $2,167,098.80 |
| B. | Estimated interest on the principal claim at 7.5% for three years | $474,969.25 |
| C. | Attorneys fees and arbitration costs: | $150,000.00 |
| Total: | | **$2,792,068.05** |

16.     Defendant PGSC Marine is the alter ego of Defendant PGSC because PGSC dominates and disregards PGSC Marine's corporate form to the extent that PGSC is actually carrying on the business and operations of PGSC Marine as if the same were its own.

17.     Upon information and belief, Defendant PGSC Marine is a shell-corporation through which Defendant PGSC conducts its business.

18.     Upon information and belief, Defendant PGSC Marine has no separate, independent identity from Defendant PGSC.

19.     Upon information and belief, Defendants PGSC Marine and PGSC share a common registered address at: The Hansa Bank Building, 1st Floor, Landsome Road, The Valley, Anguilla.

20.     Upon information and belief, Defendant PGSC Marine and PGSC share a common registered agent: Mr. Samuel McCleary.

21.     Upon information and belief, Defendant PGSC Marine acts as paying agent, or receiving agent or arranges for other non-parties to satisfy the debts and obligations of Defendant PGSC and/or receive payments being made to Defendant PGSC.

22.     Although PGSC Marine was not named in the charter parties, and had no formal relationship to the charters of the Vessel, PGSC Marine made a payment to the Plaintiff on PGSC's behalf. *See wire remittance annexed hereto as Exhibit "2."*

23.     Upon information and belief, Defendant PGSC uses Defendant PGSC Marine as a "pass through" entity such that it can insulate itself from creditors relating to its commercial obligations.

24.     It is not common practice in the maritime industry for an independent company to pay another company's debt, where it has no formal relationship to the underlying charter parties.

25.     The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN-AMRO, American Express Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A., which are believed to be due and owing to the Defendant.

26.     The Plaintiff seeks an order from this Court directing the Clerk of Court to

-4-

issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims attaching any assets of the Defendant held by

the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant,

and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to

appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendants cannot be found within this District pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue

an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and

federal common law attaching all tangible or intangible property in whatever form or any other

funds held by any garnishee, including, but not limited to, ABN-AMRO, American Express

Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC Bank USA Bank,

J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A. which are due and

owing to the Defendants, in the amount of **$2,792,068.05** to secure the Plaintiff's claims, and that

all persons claiming any interest in the same be cited to appear and pursuant to Supplemental

Admiralty Rule B answer the matters alleged in the Verified Complaint;

C.    That this Court recognize and confirm any foreign judgment/award of costs on the

claims had herein as a judgment of this Court;

D.    That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof; and

E.      That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: May 2, 2008
       New York, NY

The Plaintiff,
MARIMED SHIPPING INC.,

By:

Lauren C. Davies (LD 1980)
Thomas L. Tisdale (TT5263)
TISDALE LAW OFFICES, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 (Phone)
(212) 869-0067 (Fax)
ldavies@tisdale-law.com
ttisdale@tisdale-law.com

**ATTORNEY VERIFICATION**

State of Connecticut  )
                      )    ss: SOUTHPORT
County of Fairfield   )

1.    My name is Lauren C. Davies.

2.    I am over 18 years of age, of sound mind, capable of making this Verification and fully competent to testify to all matters stated herein.

3.    I am the attorney for the Plaintiff in this action.  I am fully authorized to make this Verification on its behalf.

4.    I have read the foregoing Verified Complaint and the contents thereof are true and accurate to the best of my knowledge, information and belief.

5.    The reason that this Verification was made by me and not the Plaintiff is that the Plaintiff is a corporation none of whose officers are present in this District.

6.    The source of my knowledge is information and records furnished to me by the Plaintiff and its counsel, all of which I believe to be true and accurate.

Dated: May 2, 2008
       Southport, Connecticut

_____
Lauren C. Davies

# EXHIBIT 1



# Marimed

PROVISIONAL FINAL CHARTER HIRE STATEMEN                     4/28/2008

| | | | | DEBIT ($) | CREDIT ($) |
|---|---|---|---|---|---|
| M/V: | CENTAURUS | C/P : | 21.06.2007 | | |
| HIRE : | $25,000.00 PER DAY | | | | |
| HIRE PERIOD: | FROM :  6/30/2007 | 12:00 hrs gmt | | | |
| | TO :  4/11/2008 | 08:00 hrs gmt | | | |
| TOTAL HIRE DUE : | 285.8333 DAYS @ | $25,000.00 | | | 7,145,833.33 |
| COMMISSION : | 5.00 % | | | 357,291.67 | |
| OFF HIRE | | JUBAIL | 0.770834 | 20,204.19 | |
| OFF HIRE | | BOILER DAMA | 2.07152 | 53,614.90 | |
| OFF HIRE | | STOPPAGE 17. | 0.28472 | 7,329.10 | |
| OFF HIRE | | CRANE B/D 25 | 0.0902 | 2,256.46 | |
| OFF HIRE | | AT SEA 15-16/( | 0.66319 | 16,762.41 | |
| OFF HIRE | | 20.12.2007 | 0.17222 | 4,390.66 | |
| OFF HIRE | | A SEA 05.02.2( | 0.19097 | 4,705.87 | |
| OFF HIRE | | AT SEA 30.03.: | 0.6875 | 17,336.12 | |
| BUNKERS | | | | | |
| IFO ON DELIVERY | 646.400 MTN X | $360.00 | | | 232,704.00 |
| MDO ON DELIVERY | 34.500 MTN X | $630.00 | | | 21,735.00 |
| IFO ON REDELIVERY | 633.400 MTN X | $360.00 | | 228,024.00 | |
| MDO ON REDELIVERY | 19.200 MTN X | $630.00 | | 12,096.00 | |
| OWNER'S EXPENSES | | | | | |
| ON HIRE SURVEY - 1/3 OF USD 672.00 | | | | 224.00 | |
| EST. O/E - SUBJECT TO RCV VOUCHERS | | | | 3,000.00 | |
| CHARTERER'S EXPENSES | | | | | |
| C/V/E LMPSM USD 1300 PMPR | | | | | 12,370.43 |
| COMPENSATION FOR CALLING INDUNESIA | | | | | 6,500.00 |
| EXTRA PAYMENT FOR LIME REMOVAL | | | | | 3,000.00 |
| INTERIM HOLDS CLEANING PARADIP (VOY 7) | | | | | 4,000.00 |
| REPAIRS STEV. DAMAGE | | | | | 1,500.00 |
| ADD REPAIS BY CREW | | | | | 3,080.00 |
| BALAST WATER AT YUZHNY V.12 - 1700/3 | | | | | 566.67 |
| INTERMEDIATE HOLDS CLEANING V.8-11,12 | | | | | 17,500.00 |
| 1/3 OF UNSEALING CERTIFICATE ($500.00) | | | | | 166.66 |
| 2/4 OF CHARGES INCURRED AT B.I.K | | | | | 4,779.50 |
| 50 PCT OFF HIRE SURVEY | | | | | 300.00 |
| CARGO SURVEY AT CZA - 1/3 | | | | | 666.67 |
| STEVEDORES DAMAGE AT ILICHEVSK | | | | | 9,000.00 |
| 50 PCT OF EXTRA PORT COST AT ILICHEVSK | | | | | 1,170.50 |
| STEV DAMAGE AT NOVO 29/5-6/6/07 2 WIAI | | | | | 3,050.00 |
| STEV DAMAGE AT NOVO HOLD NO. 2 WIAI | | | | | 2,250.00 |
| 1/3 PRELOADING SURVEY YUZHNY 2-4/2/08 | | | | | 393.48 |
| 1/3 PRELOADING SURVEY ILI - EURO 4505.74 | | | | | 2,284.63 |
| STEV DAMAGES AT J. ALI | | | | | 8,200.00 |
| IN LIEU OF HOLDS CLEANING | | | | | 4,000.00 |
| REMITTANCES | | | | | |
| ########## | 03.07-11.03.2008 | | | | |
| 74,792.84 | 03.04.2008 | | | | |
| 47,571.86 | 08.04.2008 | | | 6,682,716.66 | |
| 47,571.94 | 09.04.2008 | | | | |
| BALANCE DUE TO OWNERS | | | | 75,098.83 | |
| | | | | 7,485,050.87 | 7,485,050.87 |

| | | |
|---|---|---|
| Bankers | : | The Royal Bank of Scotland |
| | | London Shipping Business Centre Office |
| Sort code | : | 16-01-01 |
| IBAN BIC (SWIFT) | : | RBOSGB2LXXX |
| Beneficiary | : | Marimed Shipping Inc |
| IBAN | : | GB35 RBOS 1663 0000 2204 54 |
| Correspondent Bank | : | American Express Bank, New York |
| SWIFT | : | AEIBUS33XXX |

(0.00)

**Marimed Shipping Inc. - 80 Broad Street, Monrovia, Liberia**

Correspondence Address: c/o F L 1 - Sea Containers House, 20 Upper Ground, London SE1 9UJ, United Kingdom

marimed-group.com

Marimed Shipping Inc: P 00 Broad Street, Monrovia, Liberia

Correspondence Address: c/o TLT - Sea Containers House, 20 Upper Ground, London SE1 9JtL United Kingdom

**marimed-group.com**

# EXHIBIT 2

REMITTANCER-3048-000001                    1

15/02/08-16:12:01

```
---------- Instance Type and Transmission ------------
Notification (Transmission) of Original sent to SWIFT (ACK)
Network Delivery Status    : Network Ack
Priority/Delivery          : Normal
Message Input Reference    : 1612 080215HBZUGB2LAXXX3909516707
----------------------- Message Header -----------------------
                           : FIN 103 Single Customer Credt Transfer
Swift Input
Sender        : HBZUGB2LXXX
         HABIB BANK AG ZURICH
         LONDON GB
Receiver      : RBOSGB2LXXX
         ROYAL BANK OF SCOTLAND PLC
         LONDON GB
----------------------- Message Text -----------------------
20: Sender's Reference
    US080215MGT762
23B: Bank Operation Code
    CRED
32A: Val Dte/Curr/Interbnk Settld Amt
    Date        : 15 February 2008
    Currency    : USD (US DOLLAR)
    Amount      :              *54,304.00*
33B: Currency/Instructed Amount
    Currency    : USD (US DOLLAR)
    Amount      :              *54,304.00*
50K: Ordering Customer-Name & Address
    PGSC MARINE LTD
52A: Ordering Institution - BIC
    HBZUGB2L
    HABIB BANK AG ZURICH
    LONDON  GB
53A: Sender's Correspondent - BIC
    CITIUS33
    CITIBANK N.A.
    NEW YORK,NY  US
54A: Receiver's Correspondent - BIC
    AEIBUS33
    AMERICAN EXPRESS BANK, LTD.
    NEW YORK,NY  US
57D: Account With Inst -Name & Addr
    /SC160101
    THE ROYAL BANK OF SCOTLAND
    LONDON SHIPPING BUSINESS CENTRE
    OFFICE
59: Beneficiary Customer-Name & Addr
    /GB35RBOS16630000220454
    MARIMED SHIPPING INC
70: Remittance Information
    /BNF/REF MV CENTAURUS - OFF HIRE
    //CLAIM
71A: Details of Charges
    BEN
71F: Sender's Charges
    Currency    : USD (US DOLLAR)
    Amount      :              *0.00*
----------------------- Message Trailer -----------------------
{MAC:18D4604D}
{CHK:7E5E76372F22}
PKI Signature: MAC-Equivalent
----------------------- Interventions -----------------------
Category        : Network Report
Creation Time   : 15/02/08 16:11:40
Application     : SWIFT Interface
Operator        : SYSTEM
Text
{1:F21HBZUGB2LAXXX3909516707}{4:{177:0802151612}{451:0}}
```

*End of Message

# EXHIBIT 2

# STATE OF NEW YORK

# DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on May 16, 2008.

*Paul LaPointe*

Paul LaPointe
Special Deputy Secretary of State

Rev. 06/07

080410000 456

Application For Authority

of

**PERSIAN GULF SHIPPING COMPANY INC.**

Pursuant to Section 1304 of the Business Corporation Law

TO THE DEPARTMENT OF STATE OF THE STATE OF NEW YORK:

      Application is hereby made by the above-named corporation, a foreign corporation, for authority to do business in the State of New York.

FIRST      The name of the corporation in the jurisdiction of its incorporation is:

**PERSIAN GULF SHIPPING COMPANY INC.**

SECOND:  The jurisdiction of its incorporation is the Country of **Anguilla** and the date of its incorporation is: **July 19, 2004**.

THIRD:    The business which the corporation proposes to do in the State of New York is, to wit:

      Any lawful act or activity for which corporations may be organized under the Business Corporation Law of the State of New York. The corporation is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.

      The aforesaid business is authorized in the jurisdiction of its incorporation.

FOURTH:    The office of the corporation, within the State of New York, is to be located in the County of **New York**.

FIFTH:     The Secretary of State of the State of New York, is designated as agent of the corporation upon whom process against it may be served. The post office address to which the Secretary of State shall mail a copy of any process against the corporation is **Mahoney & Keane, LLP, 111 Broadway, Tenth Fl., New York, NY 10006**.

SIXTH:     The corporation has not since its incorporation or since its date its authority to do business in the State of New York was last surrendered, engaged in any activity in this state except as set forth in Section 1301(b) of the Business Corporation Law of the State of New York.

SEVENTH:  Annexed hereto is a certificate of an authorized officer of the jurisdiction of its incorporation indicating the date of its incorporation and that the corporation is an existing corporation.

PAGE 15/ 18                  FAX:                 ID:      FILE No.104 05/22 '08 17:22

IN WITNESS WHEREOF, this Application For Authority has been subscribed this ___9___ day of April, 2008, by the undersigned who affirms that the statements made herein are true under the penalties of perjury.

PERSIAN GULF SHIPPING COMPANY INC.

Edward A. Keane, Attorney-in-Fact
On Behalf of
Faisal Baghpati, President

FROM : KOPAK SHPG                         PHONE NO. : 9221 4541955             APR. 09 2008 07:36PM P2

# SAMUEL McCLEERY

## SOLICITOR AND NOTARY PUBLIC OF THE EASTERN CARIBBEAN SUPREME COURT AT ANGUILLA

Hansa Bank Building
P.O. Box 1027
The Valley
Anguilla
West Indies

Telephone: (264) 497 3527
Telefax:    (264) 497 5638
E-Mail: ultra@anguillanet.com
Website: www.sdlmccleery.com

Your Ref:
My Ref:  SM

04 April 2008

## CERTIFICATE RELATING
## TO
## PERSIAN GULF SHIPPING COMPANY INC
### (Anguilla IBC No. 2040686)

I, Samuel McCleery, Solicitor and Notary Public of the Eastern Caribbean Supreme Court at Anguilla, and Corporate Manager licensed by the Financial Services Commission of the Government of Anguilla of P.O.Box 1027, The Valley, Anguilla, West Indies, certify with regard to the Company as follows :

That the Company is, and has been since its initial incorporation in Anguilla, in Good Standing in accordance with the laws of Anguilla.

**SAMUEL McCLEERY**
Solicitor and Notary Public of the
Supreme Court of Eastern Caribbean at Anguilla
Licensed Corporate Manager by the Financial Services
Commission of the Government of Anguilla

IMPORTANT NOTICE: This letter whether despatched by mail, facsimile, courier or otherwise is confidential and intended for the use of the party named therein. Any reader of this letter who is not the intended recipient is hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error please notify me by telephone and return the letter to me at the above address by mail or otherwise instructed by me. I will reimburse you for your mailing costs and telephone charges.

080410080 456

Application For Authority

of

PERSIAN GULF SHIPPING COMPANY INC.

Pursuant to Section 1304 of the Business Corporation Law

## Blu-39
## Drawdown

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED APR 1 0 2008
TAX $
BY:

FILED
2008 APR 10 AM 11:27

Filed By:

BLUMBERG*EXCELSIOR* CORPORATE SERVICES, INC.
52 SOUTH PEARL STREET, 2ND FL.
ALBANY, NY 12207

# EXHIBIT 3

A **professional service corporation** may be formed by filing a Certificate of Incorporation pursuant to **Section 1503 of the Business Corporation Law**. "Profession," as defined in **Section 1501(b) of the Business Corporation Law**, includes any practice as an attorney and counselor-at-law, or as a licensed physician, and those occupations designated in **Title Eight of the Education Law**. For a listing of professional services, please see <u>NYS Department of Education, Office of the Professions</u>.

A Certificate of Good Standing from the appropriate Appellate Division or a Certificate of Authority (Form PLS709) under seal from the New York State Department of Education, Division of Professional Licensing Services, Corporations Unit, 89 Washington Avenue, 2nd Floor, Albany, NY 12234, must be submitted with the Certificate of Incorporation.

The completed certificate and statutory filing fee of $125, plus the applicable tax on shares pursuant to **Section 180 of the Tax Law**, should be forwarded to the NYS Department of State, Division of Corporations, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

- <u>Fillable Professional Service Certificate of Incorporation Form</u> (23KB Typeable PDF Form) (2 pages)
- <u>New York "Business Corporation Law" Text at NYS Senate Site</u>
- <u>New York "Tax Law" Text at NYS Senate Site</u>
- <u>Payment by Credit Card</u>



## Application for Authority
*Foreign Corporations*

A **foreign business corporation** may apply for authority to do business in the State of New York by filing an Application for Authority pursuant to **Section 1304 of the Business Corporation Law**.

The Department of State does not give opinions as to what activities constitute doing business in New York State for qualification purposes. You may wish to review a Legal Memorandum entitled <u>"Doing Business" in New York: An Introduction to Qualification</u> for further clarification.

**Section 301 of the Business Corporation Law** includes provisions relating to the name of the corporation. For example, the name of the proposed corporation must end with the word "Incorporated" or another word or abbreviation indicative of corporate character. In addition, certain words and phrases require the consent or approval from another state agency prior to filing the document with the Division of Corporations. If there is any doubt as to what, if any, consents or approvals may be required, the Division of Corporations or the agency in question should be contacted prior to submitting the document for filing to the Division of Corporations.

Attached to the Application for Authority must be a Certificate of Existence from the official who files and maintains corporate records in the jurisdiction of the corporation. The Certificate of Existence must be dated within one year. (*Please Note*: This official is generally the Secretary of State, and many jurisdictions refer to the Certificate of Existence as a Certificate of Good Standing.)

The completed Application for Authority and statutory filing fee of $225, made payable to the Department of State, should be forwarded to the Department of State, Division of Corporations, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231. **However**, if the foreign corporation has been conducting business in New York State prior to filing its Application for Authority, it must obtain the consent of the State Tax Commission (*§1304 (a)(8), Business Corporation Law*). To obtain the consent, the completed Application for Authority and fees must be sent to the Department of Taxation and Finance, Corporation Tax Bureau, W.A. Harriman State Campus, Albany, NY 12227. Upon consenting to the filing, the Department of Taxation and Finance will forward the Application for Authority and fees directly to the Department of State for filing.

- <u>Fillable Application for Authority Form</u> (114KB PDF Form) (4 pages)
- <u>New York "Business Corporation Law" Text at NYS Senate Site</u>
- <u>New York State Department of Taxation and Finance</u>
- <u>Payment by Credit Card</u>

**NYS Department of State**                                              **Counsel's Office**

# Legal Memorandum CO01
# "DOING BUSINESS" IN NEW YORK:
# AN INTRODUCTION TO QUALIFICATION

### General Guidelines

Certain organizations formed outside New York may not do business in New York until authorized to do so. Called "foreign," whether formed in another state of the United States or in another country, such organizations include for-profit and not-for-profit corporations, limited liability companies, and limited partnerships. *See generally*, Business Corporation Law §§ 1301 - 1320 (for-profit corporations), Limited Liability Company Law §§ 801 - 809 (limited liability companies), Not-for-Profit Corporation Law §§ 1301 - 1321 (not-for-profit corporations), and Partnership Law § 121-901 - 121-908 (limited partnerships). (For simplicity and for reasons of history, much of this discussion will refer to corporations. In context, such a reference should be taken as including other forms.) The requirement to obtain authority to do business exists to protect domestic organizations from unfair competition and to place domestic and foreign organizations on an equal footing. "Fairness and justice require that when a foreign corporation comes into our State to conduct business under similar methods and to the same degree it does in its own state, or as do our domestic corporations, that such a corporation should be subject to New York laws and regulations as a recompense for the advantages enjoyed by it." *William L. Bonnell Co. v. Katz*, 23 Misc.2d 1028, 1031, 196 N.Y.S.2d 763, 768 (Sup. Ct. 1960).

Organizations obtain authority to do business in New York by making a filing, an "application for authority," in the Department of State. The effect of an application for authority is twofold: the organization acknowledges that it considers itself to be doing business in the state, and it facilitates legal and administrative proceedings by specifying in the application for authority where and in what manner the organization may be served with process. The application for authority does not subject the foreign organization to any substantive regulation that does not also apply to a foreign organization doing business without authority. The consequence of doing business without authority is that the organization may not affirmatively use New York courts until it obtains authority and pays all arrears in fees, penalties, and taxes.

The ability of a state to require a foreign corporation to apply for authority (or "to take out a license" or "to qualify") traces to *Paul v. Virginia*, 75 U.S. (8 Wall.) 168 (1868). It holds that only natural persons are "citizens" within the meaning of the Privileges and Immunities Clause. U.S. Constitution art. IV, § 2. From this it follows that a state has the power to exclude a foreign corporation from doing intrastate business within its borders. However, no state may exclude or condition admission of a foreign corporation that engages solely in interstate or foreign commerce. The Commerce Clause, U.S. Constitution art. I, § 8, cl. 3, commits to Congress, and impliedly withholds from states, the power to regulate interstate and foreign commerce. Holding that a corporation engaged in interstate commerce need not comply with a foreign corporation statute, the U.S. Supreme Court said, "A corporation of one state may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of [interstate] commerce; and any statute of the latter state which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause." *Dahnke-Warner Milling Co. v. Bondurant*, 257 U.S. 282, 290 (1921). *See also, International Textbook Company v. Tone*, 220 N.Y. 313, 115 N.E. 914 (1917) ("We have steadily upheld the right of foreign corporations, without aid of any license, to engage in activities incidental to commerce between the states." 220 N.Y. at 318.).

Whether an organization is "doing business" sufficient to require it to qualify is often the source of

confusion. In part this is because we tend no longer to think about organizations, especially corporations, in the same way as do the historical cases. Another source of confusion is the fact that Business Corporation Law § 1301(b) and its analogs do not define doing business; they contain only a nonexclusive list of what does not constitute doing business. (See the discussion below.) Yet more confusion stems from use of the same term, "doing business," in two other separate, but related, contexts: whether a corporation's activities in a state are sufficient to subject it to personal jurisdiction and whether a corporation's presence within a state requires it to pay taxes. Before any further discussion of qualification, some discussion of these other uses of the term is worthwhile.

The power of New York courts to subject a foreign corporation to personal jurisdiction because it is "doing business" in the state derives from case law. Courts continue to exercise the power by virtue of Civil Practice Law and Rules § 301. In this sense of the term, "a foreign corporation is amenable to suit in New York courts if it is 'engaged in a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction'." *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 227 N.E.2d 851, 281 N.Y.S.2d 21 (1967) quoting *Simonson v. International Bank*, 14 N.Y.2d 281, 285, 200 N.E.2d 427, 429, 251 N.Y.S.2d 433, 436 (1964). *See also, Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 77 N.Y.2d 28, 565 N.E.2d 488, 563 N.Y.S.2d 21 (1990). This test of "doing business" is a simple and pragmatic one, which varies in its application depending on the particular facts of each case. *Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 432, 208 N.E.2d 439, 441-2, 260 N.Y.S.2d 625, 629 (1965). *See,* D. Siegel, *New York Practice*, §§ 82, 83. A court must be able to say from the facts that the corporation is present "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917).

The traditional test of doing business for purposes of CPLR § 301 is more demanding than that for longarm jurisdiction under CPLR § 302(a)(1). CPLR § 302 discards the traditional concept of doing business for a broader standard, that of transacting any business. It also abandons the requirement of the defendant's "presence." However, even CPLR §302 fails to exhaust the full jurisdictional potential permissible under the due process clause of the federal constitution. *See Simonson v. International Bank, supra, and Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965). The classic statement of that principle is that for a state to assert jurisdiction the defendant must have "certain minimum contacts . . . such that the maintenance of suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316; 66 S.Ct. 154, 158, 90 L. Ed. 95 (1945). A party subjects itself to jurisdiction consistent with traditional notions of fair play and substantial justice when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denkcla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Conducting activities without the state that are purposefully directed at the forum state also satisfies the constitutional standard. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being brought into court there. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 1000 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Constitutional limitations on the authority of a state to collect taxes from a foreign business engaged in interstate commerce derive from two sources. The first is the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, pertaining the jurisdiction to tax. *Wisconsin v. Penney Co.*, 311 U.S. 435, 445, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940). For a state to validly tax an interstate commercial activity, it must have "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-5, 74 S.Ct. 535, 538, 98 L.Ed.2d 744 (1953).

The second source is the Commerce Clause. *Complete Auto Transit v. Brady*, 430 U.S. 274, 287-9, 97 S.Ct. 1076, 1083-84, 51 L.Ed.2d 326 (1977) outlines the Commerce Clause approach to taxation issues. It sets out a four-pronged standard for determining the validity of a state tax on interstate commercial activity: (1) The taxed activity must have a substantial nexus with the taxing jurisdiction; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; and (4) the tax must be fairly related to the services provided by the state. 430 U.S. at 279, 97 S.Ct. at 1079. This analysis, with some modification, is still followed. *See, National Geographic v. California Equalization Board*, 430 U.S. 551, 97 S.Ct. 1386, 51 L. Ed.2d 631(1977), *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed. 336 (1979), *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), and *Oklahoma Tax Commission v. Jefferson Lines*, 514 U.S. 175, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995). *See also, Homier Distributing Co., Inc. v. City of Albany*, 90 N.Y.2d 153, ___ N.E. 2d ___, 656 N.Y.S. 2d 223 (1997), *Matter of Orvis Co. v. Tax Appeals Tribunal*, 86 N.Y.2d 165, 654 N.E.2d 954, 630 N.Y.S.2d 690 (1995), *cert. den.* 64 U.S.L.W. 2012, 116 S.Ct. 518, and *Ontario Trucking Association v. Department of Taxation and Finance*, 168 Misc. 2d 648, 640 N.Y.S. 2d 377 (1996).

Debating whether the jurisdictional doing business test and the taxation doing business test are the same is not necessary nor fruitful here. What is important is that it takes a higher level of contact to invoke the qualification requirement. *Invacare Corp. v. John Nageldinger & Son, Inc.*, 576 F. Supp. 1542 (E.D.N.Y. 1984), *Storwal International, Inc. v. Thom Rock Realty Co., L.P.*, 784 F. Supp. 1141 (S.D.N.Y. 1992). It follows that if an organization is not doing business that subjects it to jurisdiction or taxation, it is not doing business that requires qualification. Conversely, by qualifying an organization concedes that it is subject to jurisdiction and taxation. Above the jurisdiction and taxation minimum contacts, however, not all business activity engaged in by a foreign organization rises to "doing business" in the qualification sense *Von Arx, A.G. v. Breitenstein*, 52 A.D.2d 1049, 384 N.Y.S.2d 895 (4th Dept. 1976), *aff'd* 41 N.Y.2d 958, 363 N.E.2d 582, 394 N.Y.S.2d 876 (1977).

Lending support to the assertion that more is necessary for qualification purposes are the cases that articulate the test as one of corporate continuity of conduct here. *Penn Collieries Co. v. McKeever*, 183 N.Y. 98, 75 N.E. 955 (1905) (To be "doing business in this State" implies corporate continuity of conduct in that respect. 183 N.Y. at 103), *International Fuel & Iron Corp. v. Donner Steel Co.*, 242 N.Y. 224, 151 N.E. 214 (1926) ("[T]he foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose." 242 N.Y. at 230). For the qualification requirement to apply, the local or intrastate contacts with New York must be permanent, continuous, and regular. *Netherlands Shipmortgage Corp. v. Madia*, 717 F.2d 731, 1984 A.M.C. 141, 72 A.L.R. Fed. 562 (2d Cir. 1983) ("New York courts have repeatedly and recently affirmed the vitality of this standard which requires the intrastate activity of a foreign corporation to be permanent, continuous, and regular for it to be doing business in New York. [Citations omitted.]"). *See also, Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974); *cf. Eli Lilly & Co. v. Sav-On Drugs, Inc.*, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961). Put another way, "[t]he 'more' that is required for section 1312 of the Business Corporation Law lies not in the quantum but rather in the nature of the business in New York." *Paper Manufacturers Co. v. Ris Paper Co.*, Inc., 86 Misc.2d 95, 98, 381 N.Y.S.2d 959, 963 (Civ. Ct. 1976).

Statute offers little guidance on the nature of the business required for qualification. For example, Business Corporation Law § 103(b) provides, "This chapter applies to commerce with foreign nations and among the several states, and to corporations formed by or under any act of congress, only to the extent permitted under the constitution and laws of the United States." However, as the preceding discussion shows, that is a truism. Beyond that, Business Corporation Law § 1301(b) and its analogs offer only nonexclusive lists of activities that do not constitute doing business. As a class these are activities that have to do with maintaining the organization's status as an entity. Examples include holding meetings of owners or managers, maintaining bank accounts, and defending actions and proceedings.

Most of the law of "doing business" is found in the decisions of courts. Those cases afford no precise measure of the extent of the activities which may be determinative of whether a foreign organization is doing business in New York for purposes of qualification. Each case must be decided on its own facts. *William L. Bonnell Co. v. Katz*, 23 Misc.2d 1028, 196 N.Y.S.2d 763 (Sup. Ct. 1960). Besides the requirements that activities exhibit local or intrastate character and be permanent, continuous, and regular, a third general factor emerges from those decisions-- the relationship of the activity to the ordinary and regular business of the organization. If the activity is vital and essential to the organization's business, it will have to qualify. If the activity is merely incidental to that business, it will not. *Cummer Lumber Co. v. Associated Manufacturers Mutual Fire Insurance Corp.*, 67 App.Div. 156, 156, 73 N.Y.S. 668, 671 (2d Dept. 1901), *aff'd mem.* 173 N.Y. 633, 66 N.E. 1106 (1903), *Penn Collieries Co. v. McKeever, supra.* The court in *Invacare Corp. v. John Nageldinger & Sons, Inc.*, 576 F. Supp. 1542 (E.D.N.Y. 1984), regarded *Parkwood Furniture Co. v. OK Furniture Co.*, 76 A.D.2d 905, 429 N.Y.S.2d 240 (2d Dept. 1980) and *Colonial Mortgage Co. v. First Federal Savings and Loan Association*, 57 A.D.2d 1046, 395 N.Y.S.2d 798 (4th Dept. 1977) as examples by which to judge other fact patterns.

This article discussed the general guidelines that inform the cases on doing business in New York for purposes of qualification. For further reading see Note, *Foreign Corporations: What Constitutes Doing Business Under New York's Qualification Statute?*, 44 Fordham Law Review 1042 (1976) and Annotation, *What Constitutes Doing Business Within State for Purposes of State "Closed-Door" Statute Barring Unqualified or Unregistered Foreign Corporation from Local Courts - Modern Cases*, 88 A.L.R. 4th 466 (1991).

February 2000

---

[ Home ] [ Counsel's Office Menu Page ] [ Legal Memoranda - Corporations ]

# EXHIBIT 4

New York State
Department of State
Division of Corporations, State Records
and Uniform Commercial Code
41 State Street
Albany, NY 12231
www.dos.state.ny.us

# APPLICATION FOR AUTHORITY
# OF

_____

*(Insert corporate name)*

Under Section 1304 of the Business Corporation Law

**FIRST:**  The name of the corporation is:


If the name does not contain a required word or abbreviation indicating corporate character pursuant to § 301 of the Business Corporation Law, the corporation agrees to add the word or abbreviation to the end of its name for use in this state.

(Do not complete this section unless the corporation's true name is not available pursuant to §301 or § 302 of the Business Corporation Law.)  The fictitious name under which the corporation will do business in New York is:



**SECOND:**   The jurisdiction in which the corporation was organized is:

The date of its incorporation is:

**THIRD:**   This corporation is formed to engage in any lawful act or activity for which a corporation may be organized under the Business Corporation Law, provided that it is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.


**FOURTH:**   The county within this state in which the office of the corporation is to be located is:                                       . (A county in New York State must be stated. Please note that the corporation is not required to have an actual physical office in this state.)


DOS-1335 (Rev. 11/06)                    -1-

FIFTH:    The secretary of state is designated as agent of the corporation upon whom process against the corporation may be served. The address to which the secretary of state shall mail a copy of any process accepted on behalf of the corporation is:

SIXTH:  (*Check the statement that applies.*)

☐        The foreign corporation has not since its incorporation or since the date its authority to do business in New York was last surrendered, engaged in any activity in this state.

☐        The consent of the State Tax Commission is attached.

**X** _____
*Signature*

_____
*Name of signer*

_____
*Title of signer*

-2-

# APPLICATION FOR AUTHORITY
# OF

*(Insert corporate name)*

Under Section 1304 of the Business Corporation Law

## Filed by:

*(Name)*

*(Mailing address)*

*(City, State and Zip code)*

Note: This form was prepared by the New York State Department of State for filing an application for authority for a business corporation. It does not contain all optional provisions under the law. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores. The Department of State recommends that legal documents be prepared under the guidance of an attorney. **Annexed to the application for authority must be a Certificate of Existence from the official who files and maintains incorporation records in the jurisdiction of the corporation's incorporation. (Please note: This official is generally the Secretary of State and many jurisdictions refer to the Certificate of Existence as a Certificate of Good Standing.)** The application must be submitted with a $225 filing fee. Checks should be made payable to the Department of State.

# EXHIBIT 5

New York State
Department of State
Division of Corporations, State Records
and Uniform Commercial Code
41 State Street
Albany, NY 12231

# CERTIFICATE OF SURRENDER OF AUTHORITY
# OF

_____

*(Insert Name of Foreign Corporation)*

Under Section 1310 of the Business Corporation Law

**FIRST:** The name of the corporation as it appears on the index of names in the Department of State is: _____.

(Complete this paragraph only if the corporation has agreed to use a fictitious name in New York State.) The fictitious name the corporation has agreed to use in New York State is: _____

_____.

**SECOND:** The jurisdiction of incorporation of the corporation is: _____

_____.

**THIRD:** The date on which the corporation was authorized to do business in New York State is:

_____.

**FOURTH:** The corporation surrenders its authority to do business in New York State.

**FIFTH:** The corporation revokes the authority of its registered agent, if any, previously designated.

**SIXTH:** The corporation consents that process against it in any action or special proceeding based upon any liability or obligation incurred by it within this state before the filing of the certificate of surrender of authority may be served on the Secretary of State after the filing thereof in the manner set forth in paragraph (b) of Section 306 (Service of process). The address to which the Secretary of State shall mail a copy of any process against it served upon him is: _____

_____

_____.

_____            _____
*(Signature)*                                              *(Name of Signer)*

                                                            _____
                                                            *(Title of Signer)*

DOS-1563 (Rev. 10/07)

-1-

# CERTIFICATE OF SURRENDER OF AUTHORITY
## OF

_____

*(Insert Name of Foreign Corporation)*

Under Section 1310 of the Business Corporation Law

Filer's Name _____

Address _____

City, State and Zip Code _____

NOTE: This form was prepared by the New York State Department of State. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores. The Department of State recommends that all documents be prepared under the guidance of an attorney. **The certificate requires the consent of the State Tax Commission.** The Certificate of Surrender of Authority, together with the filing fee of $60 made payable to the Department of State, must be sent directly to the Department of Taxation and Finance, Corporation Tax Bureau, Dissolution Unit, State Campus, Albany, NY 12227, so that the consent of the State Tax Commission may be annexed thereto. Upon consenting to the filing, the Department of Taxation and Finance will forward the Certificate of Surrender of Authority and fees directly to the Department of State for filing.

_____

*For Office Use Only*

-2-

Corporation Tax Dissolution Unit
Building 8, Room 958
W. A. Harriman Campus
Albany, NY 12227

Upon receipt of the consent of the State Tax Commission, the Certificate of Dissolution, and the statutory filing fee of $60 should be forwarded to the New York State Department of State, Division of Corporations, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

- Voluntary Dissolution of a New York Business Corporation Brochure
- Fillable Certificate of Dissolution Form (109KB PDF Form) (2 pages)
- New York "Business Corporation Law" Text at NYS Senate Site
- New York State Department of Taxation and Finance
- Payment by Credit Card



## Certificate of Surrender of Authority
*Foreign Corporations*

A foreign authorized corporation (which will remain in existence in its home state) may surrender its authority to conduct business in New York State. The authority of the foreign corporation shall terminate upon the filing of a Certificate of Surrender of Authority pursuant to **Section 1310 of the Business Corporation Law**. The Certificate of Surrender of Authority requires the consent of the State Tax Commission.

The Certificate of Surrender of Authority, together with the filing fee of $60 made payable to the Department of State, must be sent directly to the Department of Taxation and Finance, Corporation Tax Bureau, Dissolution Unit, State Campus, Albany, New York 12227, so that the consent of the State Tax Commission may be annexed thereto. Upon consenting to the filing, the Department of Taxation and Finance will forward the Certificate of Surrender of Authority and fees directly to the Department of State for filing.

- Fillable Certificate of Surrender of Authority Form (11KB PDF Form) (2 pages)
- New York "Business Corporation Law" Text at NYS Senate Site
- New York State Department of Taxation and Finance
- Payment by Credit Card



## Certificate of Termination of Existence
*Foreign Corporations*

A foreign authorized corporation that has been dissolved, merged out of existence or had its authority to conduct its business terminated or canceled in its jurisdiction of incorporation, shall file a Certificate of Termination of Existence with the New York State Department of State. A certificate, which includes a termination statement, under seal of the Secretary of State or equivalent official of the corporation's jurisdiction, must be submitted. Please note a certified copy of the filing is not acceptable. Please see **Section 1311 of the Business Corporation Law**. The certificate must be enclosed in a white cover sheet that sets forth the title of the document and the name and address