```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MARIMED SHIPPING INC.,              :
                                    :
                         Plaintiff, :   08 Civ. 4228
                                    :
        - against -                 :   DECISION AND AMENDED
                                    :          ORDER
                                    :
PERSIAN GULF SHIPPING CO. INC. a/k/a:
PERSIAN GULF SHIPPING CO. LTD. a/k/a:
PGSC and PGSC MARINE LTD.,          :
                                    :
                        Defendants. :
------------------------------------X
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-1-08

**VICTOR MARRERO, United States District Judge.**

On May 2, 2008, plaintiff Marimed Shipping Inc. ("Marimed") applied ex parte for an order for process of a maritime attachment (the "Attachment") against defendant Persian Gulf Shipping Co. Inc. a/k/a Persian Gulf Shipping Co. Ltd. a/k/a PGSC ("PGSC") and PGSC Marine Ltd. ("PGSC Marine") (collectively, "Defendants") pursuant to Rule B ("Rule B") of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims ("Admiralty Rules"). See Fed. R. Civ. P. Supp. R. B(1). The Court granted the order.

Defendants now move to vacate the Attachment pursuant to Rule E ("Rule E") of the Admiralty Rules. See Fed. R. Civ. P. Supp. R. E(4)(f). By Order dated June 26, 2008, the Court granted Defendants' motion and indicated that it would subsequently set forth its findings, reasoning, and

1

conclusions in a separate decision. For the reasons stated below, Defendants' motion to vacate the Attachment is GRANTED.

## I. BACKGROUND[1]

Marimed chartered the motor vessel "CENTAURUS" to PGSC by time charter party dated June 21, 2007 (the "Time Charter Party"). The Time Charter Party provides that all disputes arising thereunder are to be submitted to arbitration in London with English law to apply. After Defendants allegedly redelivered the vessel late and committed other breaches of the Time Charter Party, Marimed commenced arbitration in England. On May 5, 2008, Marimed, expecting to recover approximately $2.8 million in the arbitration proceedings, obtained the Attachment in this Court against Defendants in that amount. Defendants argue that the Attachment should be vacated because PGSC can be "found within the district," so that the requirements for an attachment pursuant to Rule B have not been satisfied. Fed. R. Civ. P. Supp. R. B(1)(a).

## II. DISCUSSION

A. LEGAL STANDARD

A plaintiff must establish four factors in order for a Rule B attachment to issue: (1) the plaintiff "has a valid

---

[1] The factual recitation set forth below is drawn from the Verified Complaint, dated May 2, 2008 (the "Complaint") and the Declaration of Lauren C. Davies, dated May 30, 2008 ("Davies Decl."). Except as quoted or otherwise cited, no other specific reference to these documents will be made.

prima facie admiralty claim against the defendant;" (2) "the defendant cannot be found within the district;" (3) "the defendant's property may be found within the district;" and (4) "there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). "[A] district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." Id. at 445; see also Fed. R. Civ. P. Supp. R. E(4)(f).

> Rule B provides, in relevant part, that:
>
>> "If a defendant is not found within the district ... a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property - up to the amount sued for - in the hands of garnishees named in the process."

Fed. R. Civ. P. Supp. R. B(1)(a). Although Rule B does not define "found within the district," the Second Circuit has interpreted it to require "a two-pronged inquiry: first, whether [Defendants] can be found within the district in terms of jurisdiction, and second, if so, whether [they] can be found for service of process" (the "Seawind Test"). Seawind Compania, S.A. v. Crescent Line, Inc. 320 F. 2d 580, 582 (2d Cir. 1963) (citations and quotation marks omitted). "[A] defendant will be considered 'found within the district' in which the plaintiff brings its action if the defendant has

3

sufficient contacts with the district to meet minimum due process standards and can be served with process in the district." Winter Storm Shipping, Ltd. v. TPI, 310 F. 3d 263, 268 (2d Cir. 2002) (citations and quotation marks omitted); see also Integrated Container Serv. Inc. v. Starlines Container Shipping Ltd., 476 F. Supp. 119, 122 (S.D.N.Y. 1979) (stating "[a] maritime attachment is precluded under [Rule B] only if the defendants have engaged in sufficient activity in the district or the cause of action has sufficient contacts with the district to permit the court to exercise in personam jurisdiction over the defendants" and the defendant "can be found within the geographical confines of the district for service of process.") (citing Seawind, 320 F. 2d at 582; Antco Shipping Co., Ltd. v. Yukon Compania Naviera, S.A., 318 F. Supp. 626 (S.D.N.Y. 1970)). Whether a defendant is found within the district is to be determined as of the date the complaint is filed. See Parkroad Corp. v. China Worldwide Shipping Co. Ltd., No. 05 Civ. 5085, 2005 WL 1350434, at *1 (S.D.N.Y. June 6, 2005) (citations omitted); see also Construction Exporting Enters. v. Nikki Mar. Ltd., 558 F. Supp. 1372, 1375 (S.D.N.Y. 1983).

B.   APPLICATION

Marimed does not dispute that the second prong of the Seawind test is satisfied. At the time Marimed filed the Complaint, PGSC was duly registered with the New York State

Department of State (the "Department of State") to do business in New York State as a foreign corporation, with a designated agent for service of process in this District. Marimed claims, however, that the first prong of the Seawind Test is not satisfied because PGSC cannot be found within this District for jurisdictional purposes. The Court disagrees.

Marimed relies primarily on Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GMBH & Co. KG to argue that general jurisdiction obtained through registration to do business in New York State with the Department of State is not enough to provide jurisdictional presence for the purposes of the first prong of the Seawind Test, and that Defendants must have "continuous and systematic" presence in the district. 409 F. Supp. 2d 427, 438 (S.D.N.Y. 2006). Although the Erne Court acknowledged that "there is ample New York case law stating that [registering to do business with the New York Department of State] is sufficient to subject a foreign corporation to general jurisdiction for any cause of action in New York State," it held that the defendant's registration to do business in New York State by itself was insufficient for the defendant to be found within the district within the meaning of Rule B. Erne, 409 F. Supp. 2d at 436 (citations omitted). Specifically, the Court reasoned that:

> First, a mere filing for authorization to do business provides no security to a plaintiff. While we recognize that a rule requiring actual presence in the district

5

>   (rather than just consent) also does not necessarily provide security, at least actual presence makes it far more likely that assets might be located in the district to levy upon should the suit be successful. A voluntary filing under the Business Corporation Law, by contrast, has little or no correlation with the presence of assets. Second, with respect to assuring the defendant's appearance in the action, the mere act of filing provides no assurance that suit could be instituted in the future since the authorization can be surrendered unilaterally at any time.

Id. at 438. Erne has since been questioned, however, and several recent cases in this District have declined to follow it.

In Express Sea Transp. v. Novel Commodities S.A., Judge Lynch vacated a Rule B maritime attachment where the defendant had registered with the Department of State to do business in New York and submitted to the jurisdiction of the court on the record. (See Hr'g Tr. 6:2-7:23, May 4, 2006 ("Express Sea Tr."); see also Order dated May 4, 2006, 06 Civ. 2404, Docket No. 18.) The plaintiff in that case, relying on Erne, argued that a defendant may only be found within the district "if it engages in substantial commercial activity within the district." (Express Sea Tr. at 6:9-11.) However, Judge Lynch rejected that argument, explaining that "[a]side from the fact that Erne appears to this court to be in conflict with Seawind, this court does not find the reasoning of Erne persuasive" because "a Rule B attachment presupposes that there are assets in this [D]istrict, assets that have already been attached," and that a defendant's ability to withdraw its

6

registration from the Department of State is irrelevant because once the defendant is sued and served within this District, jurisdiction is established and cannot be revoked. (Id. at 9:20-10:13.) Judge Lynch also noted that "[e]ssentially, Rule B gives potential defendants a choice, either they subject themselves to the courts of the district, or they open up the possibility that their property in the district will be attached." (Id. at 10:13-16.)

In Centauri Shipping Ltd. v. Western Bulk Carriers KS, Judge Sullivan vacated a Rule B maritime attachment because the plaintiff failed to satisfy the requirements for an attachment pursuant to Rule B. The Court held that the defendant was found within the district. (See Order dated Sept. 12, 2007, 07 Civ. 4761, Docket No. 22.) In particular, the court determined that the defendant was

> present in the District ... both jurisdictionally, by virtue of its ... registration with the [Department of State] to conduct business in the State of New York, and readily in terms of its amenability to accept service of process by virtue of its ... appointment of a designated agent for service of process within the District.

(Id. at 1.) The plaintiff, relying on Erne, argued that the defendant was required to have continuous and systematic contacts to be found within this District. Judge Sullivan rejected that argument as being inconsistent with the Second Circuit's decision in Seawind and noting that the "key inquiry relating to the [first] prong of the Seawind Test is whether

7

the defendant is amenable to suit within the district." (Hr'g Tr. 7:6-11, dated Sept. 7, 2007) (citing Express Sea Tr. at 8:25-9:5.)

Subsequently, in Carolina Shipping, Ltd. v. Renaissance Ins. Group, Ltd., Judge Jones vacated a Rule B maritime attachment, declining to follow Erne and agreeing instead with the "bulk of recent authority in this [D]istrict" that "registration with the [Department of State] is sufficient contact" to satisfy the first prong of the Seawind Test. (Hr'g Tr. 17:20-24, dated June 10, 2007 (citing Rockefeller Univ. v. Ligand Pharm. Inc., No. 08 Civ. 2755, 2008 WL 2139148, at *4 (S.D.N.Y. May 19, 2008) (finding, in a non-maritime attachment case, that defendant's "unrevoked authorization to do business and its designation of a registered agent for process of service amounts to consent to personal jurisdiction in New York"); see also Order dated June 10, 2008, No. 08 Civ. 4711, Docket No. 15.)

Most recently, in Minmetals Shipping & Forwarding Co. Ltd. v. HBC Hamburg Bulk Carriers, GMBH & Co. KG, Judge Sweet vacated a Rule B maritime attachment, relying on the decisions in Express Sea and Centauri Shipping, and declining to follow Erne. See No. 08 Civ. 3533, 2008 WL 2518709 (S.D.N.Y. June 24, 2008). Judge Sweet concluded that "by virtue of [the defendant's] registration as a foreign corporation authorized to do business in New York State, [the defendant] was, at all

8

relevant times, 'found' within this [D]istrict." Id. at *4.

The Court, in this case, will follow the majority of decisions in this District that hold that a defendant's registration as a foreign corporation authorized to do business in New York State, with a designated agent for service of process in this District, satisfies both prongs of the Seawind Test for "found within the district." Seawind, 320 F. 2d at 582.

Here, Defendants, prior to commencement of this action, registered to do business in New York State and designated an agent for the service of process, and have consented to the personal jurisdiction of this Court on the record. (See Tariq Declaration, dated May 19, 2008, attached as Ex. D to Wolfson Decl.) As in Express Sea, Defendants' consent to personal jurisdiction has been obtained both constructively, through registration to do business, and explicitly on the record in these proceedings. (See Express Sea Tr. 7:7-16) ("[D]efendant is subject to suit in the courts of this district and, therefore, may be found here for purposes of jurisdiction. This is so for two reasons: First ... defendant has specifically consented to the jurisdiction of this court. Second, defendant is a registered foreign corporation within the State of New York"); see also Rockefeller Univ., 2008 WL 2139148, at *4 ("Because jurisdiction is premised upon consent, it is doubtful that the minimum contacts test under

the due process clause presents an impediment to the exercise of jurisdiction.") (citing Burnham v. Sup. Ct., 495 U.S. 604, 616-22 (1990)); Augsbury Corp. v. Petrokey Corp., 470 N.Y.S.2d 787, 789 (App. Div. 3d Dep't 1983)("A voluntary use of certain state procedures ... is in fact a form of constructive consent to personal jurisdiction which has been found to satisfy due process.") (citing Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 703-04 (1982)). Therefore, Defendants are "found within the district" for the purposes of the Seawind Test and the requirements of Rule B for a maritime attachment have not been met. Accordingly, the Attachment must be vacated.

### III. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the Court's Order dated June 6, 2008 is amended to incorporate the discussion set forth in this decision above; and it is finally

**ORDERED** that the motion (Docket No. 7) of defendants Persian Gulf Shipping Co. Inc. a/k/a Persian Gulf Shipping Co. Ltd. a/k/a PGSC and PGSC Marine Ltd. to vacate the Order of Attachment dated May 5, 2008 is GRANTED.

The Clerk of Court is directed to withdraw all pending motions and close this case.

**SO ORDERED.**

Dated:   New York, New York
         July 1, 2008

_____
Victor Marrero
   U.S.D.J.